## George W. Updike

*v.*

## Mary W. Tompkins *et al.*

*Filed at Springfield September 30, 1881.*

1. Will—*construction—as speaking from what time.* As a general rule a will is held to speak from the death of the testator, but this is otherwise where the language used repels the presumption, taking into consideration the entire instrument.

2. Same—*particular expressions must yield to general purpose.* Particular expressions will not control where the whole tenor or purpose of the will forbids a literal interpretation of the specific words. Wills, like contracts and other writings, must be construed according to the intent of the maker, and that must be ascertained from an examination of the instrument and all its provisions, without the aid of extraneous testimony.

3. Same—*construed as to cancellation of notes—whether embracing notes acquired after the making of the will.* A will provides that in case the testatrix should survive her mother, the estate should descend and be distributed as in case of intestacy, and then contained this clause: "I hold a number of notes against my brother, George W. Updike,—one of these notes is for $900, and I intend that one to be cancelled absolutely at my death, and given up to him. As to the others, if I survive mother, then at my death I want all the other notes cancelled and surrendered to George W. Updike, but if mother survives me, then George must pay the interest on the other notes until her death, and then the other notes are to be cancelled and surrendered

to him, the said George; and.I will that said $900 note shall be given up as aforesaid, and I declare that said George W. Updike, in case I.survive my mother, shall inherit equally in all my estate with my other heirs, notwithstanding the cancelling and surrendering of the said notes, his full share therein." The testatrix did survive her mother. At the time of the death of the testatrix she held six notes upon her brother. The note for $900, spoken of in the will, had already been surrendered to the maker by the testatrix. There was but one of the remaining notes which she held at the date of the will, the others having been obtained afterwards. It was *held*, the testatrix intended to have only the notes held by her at the date of the will cancelled and surrendered, not those which she might acquire after that time.

4. It was not the scheme of the will to provide a fund for the support of the mother of the testatrix, in case she should survive her daughter, from the interest to accrue upon notes, for in another clause of the will the mother was made the sole devisee of all the property in case of her survivorship. So it should not be understood from the clause which required the maker of the notes to pay the interest on "the other notes" to the mother in case she survived the testatrix, and upon her death "the other notes to be cancelled and surrendered" to the maker, that any other notes than those held by the testatrix at the date of the will were included.

APPEAL from the Appellate Court for·the Third District;— heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding.

Mr. N. W. GREEN, and Mr. WM. DON MAUS, for the appellant:

The principal question presented is, whether the will is to be construed as speaking from the date of its execution, or from the death of the testatrix.

A will speaks from the death of the testator, and not from its date, unless its language, by °fair construction, indicates the contrary intention. 1 Redfield on Wills, 379, 380; 21 Conn. 550*, 616.

Because of the words, "I hold a number of notes," etc., appellees conclude that it refers to a period of time, viz: the date of the will, and not the fact of possession or ownership of notes, hence insist that only such notes as were in existence and held by testatrix at the date of the will were to be so cancelled and surrendered. Certainly such construction

would be a strained and narrow one, and not admissible under the rule requiring the adoption of some unequivocal form of expression, having reference in terms to the date of the will. If the testatrix intended to restrict the operation of that clause in respect to the cancellation and surrender of notes to those only held at the date of the will, the clear and unequivocal form of expression would have been, "notes now held by me, and not those hereafter given me by my said brother;" and had such been her intention, then, as to after acquired notes, a codicil to the will would have disclosed it; but the language, "I hold," is the mere general form of expression naturally keeping pace with the ambulatory character of the instrument, and just as applicable at the time of the decease of testatrix as at any antecedent period. The court, we apprehend, will not so construe the intention of testatrix, and if it is conceded that the mother (in case she survived the testatrix) was to have, as income, the interest of the notes of George W. Updike, taken by testatrix after the date of said will as well as those taken before, and if notes were so taken after the date of said will and before the death of said mother, and that no other notes are in controversy, then all those notes are, by the terms of said will, to be cancelled and surrendered to appellant, and the decree below is erroneous, and should be reversed.

Mr. WILLIAM E. HUGHES, and Mr. L. DEARBORN, for the appellees:

Judge Redfield clearly recognizes the law, as laid down by an unbroken line of authorities, that while a general devise of property is presumed to take effect from death, that is not the rule in cases of specific devises of personal property. He says: "Specific gifts, whether of stock or other personal estate, have been construed to have reference to the property of the testator then in existence, and if the testator dispose of the article described, either in whole or in part, and sub-

sequently acquires more of the same description, the legacy will, nevertheless, fail as to all, except the portion not disposed of." Redfield on Wills, p. 381, sec. 7; 1 Jarman on Wills, 593; *Cochran* v. *Cochran,* 14 Sim. 248; *Slater* v. *Norton,* 16 Ves. 197.

When a testator expresses himself in the present tense, it must relate to what is in being at the time of making the will. *Abney* v. *Miller,* 2 Atkins, 593. See, also, *Goodland* v. *Burnett,* 5 Kay & J. 347; *Rudstone* v. *Rudstone,* 2 Ves. 418; *Coppin* v. *Fernyhough,* 2 B. C. C. 291.

When a testator refers to an actually existing state of things, the language will be referred to the date of the will, and not to his death, as this is then a prospective event. *Gold* v. *Judson,* 21 Conn. 616.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Two clauses of the will of Martha M. Updike are presented for construction by this record. The third clause is this: "If I survive my mother, Mary A. Updike, it is my will that my estate, real and personal, shall descend and be distributed in the same manner as intestate estates descend and are distributed under the laws of Illinois." And this is the fourth: "I hold a number of notes against my brother, George W. Updike,—one of these notes is for $900, and I intend that one to be cancelled absolutely at my death, and given up to him. As to the others, if I survive mother (Mary A. Updike), then at my death I want all the other notes cancelled and surrendered to George W. Updike, but if mother survives me, then George must pay the interest on the other notes until her death, and then the other notes are to be cancelled and surrendered to him, the said George; and I will that said $900 note shall be given up as aforesaid, and I declare that said George W. Updike, in case I survive my said mother, shall inherit equally in all my estate with my

other heirs, notwithstanding the cancelling and surrendering of the said notes, his full share therein."

At the time of her death testatrix held six notes against George W., aggregating $2278.53. But the $900 note spoken of in the will had been surrendered to him before the death of testatrix, and she only held one note of $1000, dated July 1, 1876, given before the will was executed. The will bore date the 23d of September, of that year, and testatrix survived her mother, and died May 24, 1880, and George W. qualified as executor of the will, and reported these notes, but claimed they were cancelled by the terms of the fourth clause of the will.

It is conceded that the $1000 note dated July 1, 1876, was cancelled, but it is claimed that as the other five notes were not in existence when the will was written and executed, but were afterwards given, they are not embraced in the clause requiring a cancellation,—that such notes only as were then in existence were in the mind of testatrix, and that George W. is required by the law to pay and account for all of the notes except that for $1000. The circuit and Appellate courts took this view of the case, and it is brought by appeal from the latter court to this, and a reversal is urged on the ground that the Appellate Court adopted a wrong construction of the clause.

The general rule is, that a will is held to speak from the death of the testator. To this there is, however, the limitation, that when language is used which repels the presumption, it is otherwise, and in determining that question the entire will must be considered, with the specific language employed in the clause being construed, to find the true intent of the testator. Particular expressions will not control where the whole tenor or purpose of the instrument forbids a literal interpretation of the specific words. Wills, like deeds, contracts and enactments, must be construed according to the intent of the maker, and that must be ascertained from an

examination of the instrument and all of its provisions, without the aid of extraneous testimony.

In this case the purpose of the testatrix is by no means clear and certain. The third clause seems to be free from ambiguity, but the difficulty arises in determining the true meaning of the fourth. Did testatrix intend to have both the notes she held at the time of making the will, and such as she might subsequently take from George W., cancelled and surrendered, or only the notes she then held? The question now before us is one of first impression in this court. It has, however, been frequently before the courts of Great Britain, and has been determined by several courts in the States of the Union. From them is deduced the rule above stated. Of the correctness of the rule there seems to be no question, but the difficulty arises in its application to cases as they arise.

Testatrix speaks of notes she had when she executed the will, and there is no allusion to other notes she might afterwards hold against George W. Updike. There is nothing in the will from which it may be inferred that she then supposed she would ever hold other notes on him. Had she supposed she would, it is but reasonable to believe she would have specifically disposed of them. We have no right to enter the domain of conjecture, but must be confined to the language employed. It can, according to the generally received meaning of words, only be applied to the notes she then held. The import of the language employed can only embrace notes then in existence. The fourth clause only embraces and provides specifically for the notes she then held.

The doctrine is firmly settled and uniform in its application, that where a specific article is bequeathed, its sale, loss or destruction can not be replaced by substituting another article in its stead. It has been repeatedly held that where specific stocks are bequeathed, and are afterwards sold and another kind purchased with the proceeds, the lat-

ter do not pass by the bequest. And so with the bequest of a lease for a term of years, if it is afterwards surrendered and a new lease taken, the latter does not pass by the will. Where a specific article is bequeathed, another can not be substituted, unless specifically required by the terms of the will. Here specific notes were required to be cancelled, and there is no power to extend the provision to other notes not named or even in existence when the will was executed.

It is, however, said, that after describing the $900 note she requires all of the other notes to be cancelled on the contingencies named,—that she would not have used the plural instead of the singular number if she did not intend to embrace subsequently acquired notes. This is plausible, but we think is not sound construction. The plural number must have been inadvertently used, as she was manifestly referring to the notes she then held on appellant. She begins the clause by saying: "I hold a number of notes against my brother, George W. Updike. One of these notes is for $900, and I intend that one to be cancelled absolutely at my death and given up to him. As to the others, if I survive my mother, Mary A. Updike, then at my death I want all the other notes cancelled and surrendered," etc. What other notes? Clearly the other notes she then held. The words, "the other notes," can only refer to such as she had said she held,—the remainder of the notes above the $900 note she then held. It is true that it is said she held but two notes, the $900 and the $1000 notes. If this be true, it only shows the expression, "all the other notes," was inaccurately used, as she nowhere gives the slightest intimation that she expected to have in the future any other notes of appellant, which no doubt would have been done had she intended to embrace future acquired notes.

It is also urged, that one purpose of this clause was, if her mother survived her, to make provision for the support of her mother, and the interest on the $1000 note would have

been so scanty that we must presume she intended the interest on a larger sum to afford such a fund. This position is answered by reference to the second clause of the will. By that clause she devised to her mother, in case she survived said testatrix, all of her estate, real and personal. From the amount of the notes she held on appellant, it appears that sum would have been an ample provision for the support of her mother. We can not, therefore, infer from the bequest of the interest on this $1000, that the scheme of the will was to provide a fund arising from the interest on notes for the support of her mother, as she had made provision in the second clause of the will.

After a careful study of the will, we are satisfied that testatrix only intended to have the notes then held by her cancelled and surrendered, and not subsequently acquired notes. And this construction is not only authorized, but is required by the books.

The decree of the Appellate Court is therefore affirmed.

*Decree affirmed.*