## C. J. KURTZ

*v.*

## GEORGE R. GRAYBILL *et al.*

*Opinion filed October 24, 1901.*

192    445
102a  ¹396

1. PLEADING—*effect of stipulation of fact not in the declaration.* The stipulation by the parties of a fact not contained in the declaration has the legal effect to incorporate such stipulated fact into the declaration in proper form, as one of its allegations.

2. SAME—*when stipulation of facts is a waiver of the common counts.* A stipulation between the parties for submission of the case upon demurrer, embodying a state of facts embraced in certain special counts but not referred to in the common counts which were on file, will be deemed an abandonment of such common counts.

3. WILLS—*will construed as to power of executors to sell land.* Under a will authorizing the executors to sell all real estate for the purpose of settling the testator's affairs, and to turn the proceeds over to the testator's wife "after paying my debts; and for this purpose I authorize my said executors * * * to execute all necessary deeds to perfect such sales, and * * * to make all such sales on such terms and conditions as they * * * may deem proper, * * * except the farm on which Hugh Smith now lives, and as to such farm I desire my executors not to sell the same until they can get $30 per acre," the executors are not precluded from selling the farm so excepted until the price of $30 per acre can be had, but they may sell at the best price obtainable after waiting until such sale becomes necessary in order to pay the testator's debts.

*Kurtz* v. *Graybill,* 91 Ill. App. 76, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. TRUMAN E. AMES, Judge, presiding.

This was an action of assumpsit brought by C. J. Kurtz, the plaintiff in error, in the Shelby circuit court, against George R. Graybill and Wallace E. Walker, the defendants in error, to recover back from them the purchase money for two hundred and forty acres of land situated in said Shelby county, at $19.50 per acre, which purchase money (a total of $4680) Kurtz had paid to them upon the sale and conveyance to him of the said land

by them, as executors of the last will and testament of Thomas J. Graybill, deceased.

The declaration contains two special counts and the common money counts. It was alleged in the first count, in substance, that Thomas J. Graybill had died testate owning said land, and that his will was admitted to probate in said county on or about the 15th day of December, 1893, and that said executors then accepted said trust and letters testamentary were then issued to them. The will was set out *in hæc verba*, and, so far as bearing on this case, was as follows:

"I, Thomas J. Graybill, doing business in the city of Shelbyville, Shelby county, Illinois, and a resident of Deer Park and State of Alabama, knowing the certainty of death and the uncertainty of life, do make and declare and make this my last will and testament, in the manner following, to-wit:

"*First*—It is my will that all my just and legal debts be paid, including my funeral expenses and tombstone or monument as is suitable to my station in life.

"*Second*—After all my just and legal debts are paid, I give, devise and bequeath all the rest and residue of my property, real and personal, to my dearly beloved wife, Laura E. Graybill, to have, hold and use the same during her natural life, provided she does not marry again; and in the event she marries again, then she is to have, hold and use all the residue of my property only till such time as she re-marries. At the death of my said wife, or at the date of her marriage should she see proper to marry again, it is my will that all the residue of my property shall be divided equally between the heirs of my body then living, share and share alike, and to the heirs of those dead, should they have any child or children, giving to the heirs of each deceased what such child would have taken had such child not died.

"*Third*—I hereby appoint my brother, George R. Graybill, and my friend, Wallace E. Walker, and the surviv-

ors of them, executors of this my last will and testament, as far as any property that I may die seized possessed of outside the State of Alabama. And I hereby authorize and empower said George R. Graybill and Wallace E. Walker, or the survivor of them, as executors, to sell any and all real estate outside the State of Alabama and convert the same into money, for the purpose of settling all of my affairs, and turning the proceeds thereof, after paying my debts, over to my said wife, Laura E. Graybill. And for this purpose I authorize my said executors above mentioned, or the survivor of them, to execute all the necessary deeds to perfect such sales; and I authorize them to make all such sales on such terms and conditions as they, in their judgment, may deem proper and for the best interests of my estate, except the farm on which Hugh Smith now lives, and as to the said farm I desire my executors not to sell the same until they can get $30 per acre for the same, and until they sell said farm I desire them to rent same to said Hugh Smith on such terms as are fair and reasonable. And I hereby request my wife, Laura E. Graybill, to join my executors, or the survivor of them, in such conveyances, in order to make good and sufficient title thereto; and I authorize all sales of real estate and chattel property to be made without any order of the court and at the least expense consistent with good management. And I further desire my two executors, George R. Graybill and Wallace E. Walker, or the survivor of them, to collect all notes, bonds, stock and all my life insurance policies, (not made payable to my wife,) and convert the same into money and use the same in payment of my debts, so far as it is needed, the residue to be paid to my wife. * * *

"*Fourth*—I hereby appoint my dearly beloved wife, Laura E. Graybill, executor of all my property, real and personal, that I may die seized and possessed of in the State of Alabama, except notes, bonds, stock, and life insurance policies not made payable to my wife. * * *

And I further empower her to settle with my other two executors, or the survivor of them, when they have fully settled my estate outside the State of Alabama, and receive from them and receipt to them for all money ·in their hands, after all my debts are fully paid and all the property is sold and converted into money that I have hereinbefore authorized them to sell and convert into cash. * * *

"*Fifth*—In order to more fully explain my wishes in this matter, I desire my wife, Laura E. Graybill, to have all of my property in the State of Alabama, except notes, bonds, stock and such life insurance policies not made payable to her, and all the proceeds of all my other property after the payment of my debts and expenses of settling my estate, during her widowhood, or in the event she does not re-marry, then during her natural life, remainder to my children, share and share alike, and their decedent, should any die."

Said count further alleged that afterward, on June 25, 1898, the plaintiff bought and the defendants sold to him said land for the aforesaid price and sum of money, and in consideration thereof that the defendants undertook and promised that they would grant, bargain and sell to him said land for said money, and that they also agreed and promised that they had full power to sell and convey said land at said price, and then and there executed and delivered to the plaintiff a deed for said land in the words and figures following, (setting it out.) This deed recited that it was made on the 25th of June, 1898, and that it was executed by the parties of the first part by virtue of the power and authority given to them by the last will and testament of Thomas J. Graybill, deceased, and it contained a covenant that they were the lawful executors of said will and had power to convey as aforesaid, and had acted in all respects, in making the conveyance, in pursuance of the authority granted by said will; that they had not made, done or suffered any act since they

became executors whereby said premises, or any part thereof, should be impeached, charged or encumbered in any manner. The count then alleged that by said will said land was devised to said Laura E. Graybill during her life, provided she did not marry again, and upon her marrying again, or upon her death, then to the testator's heirs; that by said will the authority of the defendants to sell and convey land did not extend to the land in question,—that is, to the farm on which Hugh Smith lived,—unless they could get $30 an acre therefor, and that the defendants had no power to sell said land for $19.50 per acre or for less than $30 per acre, whereby the said sale and conveyance of the defendants to the plaintiff was void and the title had failed. The second count set up the purchase and sale for said sum of money, the payment of the purchase money, and the covenant of the defendants that they had full power and authority to so sell and convey the land at said price. It then alleged the breach, that the conveyance was void and of no value, and that he was entitled to recover the purchase money. The common money counts were in the usual form.

The defendants demurred to the declaration, and the cause was submitted to the court on such demurrer and on the following stipulation signed by counsel, which was also incorporated in the bill of exceptions, to-wit: "It is agreed that a joint and several demurrer is filed to each count of the declaration; that the deed and will attached to declaration are true copies; that it is necessary to sell the land mentioned in declaration to pay debts of Thomas J. Graybill, deceased. The only questions to be determined are, had the defendants power, under the will, to convey the land? Can plaintiff recover the money under the facts?" The court sustained the demurrer, and the plaintiff electing to stand by his declaration, judgment was rendered against him for costs. On appeal by Kurtz, the plaintiff, the Appellate Court affirmed the judgment. He then sued out this writ of error to reverse the judgment.

CHAFEE & CHEW, for plaintiff in error.

ANTHONY THORNTON, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This case was submitted to the circuit court on an issue of law made by demurrer to the declaration, accompanied by a stipulation of a fact not contained in the declaration,—that is, that it was necessary to sell the land to pay the testator's debts. The effect of the stipulation must be regarded as incorporating such fact, in proper form, in the declaration as one of its allegations. We are also of the opinion that the stipulation operated to waive the common counts and to submit the case to the court on the issue raised by the demurrer to the two special counts, with said additional allegation that it was necessary to sell the land therein described to pay the debts of said Thomas J. Graybill, deceased. This must be so, because it is stipulated that the only questions to be determined are, had the defendants power, under the will, to convey the land?—and can the plaintiff recover the money under the facts? Neither the will nor the land is mentioned in the common counts, and the facts referred to in the stipulation are evidently those specially set out and counted on and the additional fact contained in the stipulation. It could hardly be supposed that counsel would submit the cause, on demurrer, to a common money count in the usual form, and from the stipulation it is clear, we think, that these counts were not to be regarded, but that the facts specially alleged, together with the one stipulated, were to be the facts from which the right of recovery was to be determined. We shall therefore not consider further the contention of plaintiff's counsel that he was entitled to recover under the common counts. The question at issue must be determined by the construction of the testator's will set out in the special counts.

It appears to be clear from the will that it was the intention of testator that the land in question, with other property, should be charged with the payment of his debts, and whether, by force of the second clause, the land was devised to his wife subject to the liability of being sold by the executors to pay debts, or by force and effect of the entire will she was bequeathed only the proceeds of the sale of it, and the gift was one of money and not of land, still, in either event, the land, or the proceeds of the sale of it, was or were to be first liable to be applied to the payment of debts; and by force and effect of the stipulation the declaration alleges that it was necessary to sell said land to pay such debts. It is equally clear that the defendants, as executors of the said will, were empowered by it to sell said land and to convert it into money "for the purpose of settling" the testator's "affairs and turning the proceeds thereof, after paying" such debts, over to Laura E. Graybill, the testator's wife. After expressly conferring such power the third clause of the will proceeds as follows: "And for this purpose I authorize my said executors above mentioned, or the survivor of them, to execute all the necessary deeds to perfect such sales; and I authorize them to make all such sales on such terms and conditions as they, in their judgment, may deem proper and for the best interests of my estate, except the farm on which Hugh Smith now lives, and as to the said farm I desire my executors not to sell the same until they can get $30 per acre for the same, and until they sell said farm I desire them to rent same to said Hugh Smith on such terms as are fair and reasonable. And I hereby request my wife, Laura E. Graybill, to join my executors, or the survivor of them, in such conveyances, in order to make good and sufficient title thereto; and I authorize all sales of real estate and chattel property to be made without any order of court and at the least expense consistent with good management."

The land in question is the farm mentioned in the above clause as "the farm on which Hugh Smith now lives," and, as before appears, the contention of plaintiff is, that said executors had no power to sell the same for less than $30 per acre, and that the sale and conveyance by them to him for $19.50 per acre were void, and that they, having covenanted that they had full power and authority to make said sale and conveyance, were liable in this action to respond to him for the purchase money which he had paid. We think it unnecessary to consider the point made by counsel for the defendants that the provisions of the will appeared from the public records and were a part of the chain of title, and that any mistake of the defendants as to their power to make the sale and conveyance was a mistake of law and open as well to the knowledge of plaintiff as to that of the defendants, and therefore one on account of which no recovery can be had. The plaintiff relies upon the covenants contained in the deed, and we shall consider only whether, under the conceded facts, the defendants, as such executors, had the power and authority, under the will, to make said sale and conveyance.

Leaving out, for the moment, the clause which excepts, as plaintiff contends, the "Hugh Smith farm" from the grant of power to the executors to sell and convey upon such terms as they thought best, it cannot be questioned that the executors were fully authorized by the will to sell any and all of the real estate of the testator outside of the State of Alabama, and to make such sale or sales on such terms and conditions as they, in their judgment, might deem proper for the best interests of the estate. Now, the land in question is not by the supposed exception taken out of or made an exception to the real estate which the executors were authorized to sell, but the most that can be properly claimed is, that a limitation was imposed on the exercise of such power by forbidding its exercise until they could sell the land for $30 per acre.

These provisions of the will, including the exception or limitation mentioned, are followed by a clause containing this further provision: "And I authorize all sales of real estate and chattel property to be made without any order of the court and at the least expense consistent with good management."

We have considered the argument for defendants in error that the supposed exception or limitation only expresses a desire or wish that his executors would not sell the land in controversy until they could get $30 per acre for it; that the words are merely precatory, and do not constitute an absolute qualification of or limitation to the full and express power conferred on the executors. Without expressing any opinion on this contention except to say that it is not without much force, we prefer to base the decision to which we have come after a careful consideration of all of the provisions of the will, upon a different ground,—that is, that it was not the intention of the testator that his executors should not sell the land in question, whatever might be the lapse of time, until they could get $30 per acre for it, but having in view the sale of his property, the payment of his debts, the payment of the balance of the proceeds of sales over to his wife and the settlement of his estate,—matters which he had fully committed to his executors and which it was made their duty to attend to with the least expense consistent with good management and as far as practicable without proceedings in court,—and doubtless believing that this land would appreciate in value to the limit fixed within such reasonable time as would enable them to execute the trust with which he had charged them, it was his intention that the sale of this land should be deferred (within such reasonable time for the carrying out of the provisions of the will) until it could be sold for the price named. A careful study of the will to ascertain the testator's intention inevitably leads to this conclusion, otherwise many other duties fully enjoined on the execu-

tors by the will could not be performed by them. This land was by the will charged with the payment of his debts. It was made the duty of the executors to sell it and to pay his debts and to pay the balance of the proceeds to his widow. It is alleged and conceded that it was necessary to sell it to pay his debts. The executors could proceed in but one of two ways,—that is, to sell under the power contained in the will, or institute proceedings in court to have the land sold to pay such debts,— and it must be presumed that the testator knew this, yet he authorized the sale of his real estate, including this land, "without any order of court and at the least expense consistent with good management." It appears from the allegations of the declaration that the will was probated and letters were issued to the executors on December 15, 1893, and that they waited until June 25, 1898, —nearly five years,—before they made the sale. They could not wait longer, but were compelled to choose between exercising the power of sale and executing their trust then or not at all, for it is conceded it was then necessary to sell the land to pay debts,—and that was a duty which the will required them to perform. Moreover, the widow was made executrix as to the property of the testator in Alabama, and she was empowered to settle with defendants in error, as executors in Illinois, "when," using the language of the will, "they have fully settled my estate outside the State of Alabama, and receive from them and receipt to them for all money in their hands, after all my debts are fully paid and all the property is sold and converted into money that I have hereinbefore authorized them to sell and convert into cash. In order to more fully explain my wishes in this matter, I desire my wife, Laura E. Graybill, to have all of my property in the State of Alabama, except notes, bonds, stock and such life insurance policies not made payable to her, *and all the proceeds of all my other property after the payment of my debts and expenses of settling my estate, during her widowhood.*"

It seems perfectly clear from these provisions of the will and the clear and emphatic manner in which the testator expressed his testamentary intention, that he did not contemplate or intend that the payment of his debts or the final settlement should be delayed or postponed in order that the land in question would appreciate so as to bring $30 per acre. We must conclude from the provisions of the will, and the language in which they are expressed, that the testator intended that his executors should execute their trust and perform the duties imposed on them without unreasonable delay, for the debts were to be paid, and it could not be presumed that he expected his creditors to wait until he could get $30 per acre for the land; and his widow was to receive the balance of the proceeds, to be enjoyed during her widowhood, and was to receive it before settling the estate in Alabama. The effect of the will as to the question at issue is simply this: that the testator failed to fix, in express terms, any limit to the time that he desired the executors to wait for the land to appreciate so as to bring $30 per acre, but left it to be fairly implied, from the entire will, that such time was not to extend beyond the time when it would be necessary to sell it to pay debts or to settle the estate and pay over the proceeds to the widow. As said in *Updike* v. *Tompkins*, 100 Ill. 406: "Particular expressions will not control where the whole tenor or purpose of the instrument forbids a literal interpretation of the specific words. Wills, like deeds, contracts and enactments, must be construed according to the intent of the maker, and that must be ascertained from an examination of the instrument and all of its provisions." It would do violence to the declared objects and purposes of the testator to hold that this land could not be sold, in any event, by the executors until they could get $30 per acre for it.

But the plaintiff in error contends that the land could be sold by order of court to pay debts. It is sufficient to

say that the will expressly authorizes the sale without any such order, and makes it the duty of the executors to sell "at the least expense consistent with good management."

We are of the opinion that the executors had the power and authority, under the will, to make the sale and conveyance, and that the demurrer was properly sustained to each of the special counts of the declaration, for the reason that no cause of action was alleged.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*