(No. 31911.— )

FRED WURTH, Appellee, *vs.* LOTTIE IRENE HOSMANN, Appellant.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

JAMES PERCIVAL PIO, and MYER H. GLADSTONE, both of Chicago, for appellant.

DANIEL A. GALLAGHER, of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

Fred Wurth, the appellee, brought this suit in the circuit court of Cook County, seeking specific performance of a contract to convey a farm of approximately 56 acres in Oak Lawn, Illinois, under an agreement with his uncle, Fred Hosmann. It is claimed that the uncle promised to leave the farm to his nephew, Fred Wurth, if the nephew would stay on the farm and help his uncle until the latter's death. The suit was brought against Lottie Irene Hosmann, wife of Fred Hosmann, to whom the property was conveyed on October 12, 1943. The cause was referred to a master in chancery, who found the issues for the plaintiff. His report was approved by the circuit court and a decree entered in accordance with the conclusions of the master, from which decree an appeal has been taken to this court, a freehold being involved.

The complaint filed by appellee alleges that his uncle, Fred Hosmann, entered into an agreement with the plaintiff that if plaintiff would stay and work on the farm with him, the said Fred Hosmann would devise and bequeath to the plaintiff, by his last will and testament, his farm property, together with the farmhouse, farm buildings, furniture, household goods and effects, consumable stores and provisions, crops, livestock, poultry, tools, implements, and other property belonging to the said farm upon the death of the said Fred Hosmann.

The complaint further stated that plaintiff accepted the same and completely performed his part of the contract; that on November 21, 1936, Fred Hosmann made and executed an instrument purporting to be his last will and testament devising and bequeathing all of said property to the plaintiff; that on October 9, 1943, Fred Hosmann married the defendant, Lottie Irene Hosmann, and on October 12, 1943, he conveyed the said real estate to one Nettie D. Phillips, who in turn on the same date, conveyed the real estate to Fred Hosmann and Lottie Irene Hosmann jointly;

that on October 7, 1946, after the death of Fred Hosmann, there was filed for record with the clerk of the probate court a will purporting to be the last will of Fred Hosmann, in which he left all of his property to his wife, Lottie Irene Hosmann, but that no estate had ever been opened for the purpose of probating said will.

The complaint also alleges that the will of Fred Hosmann, dated November 21, 1936, making plaintiff the sole beneficiary has never been found and that Lottie Irene Hosmann has refused to carry out the terms of the said agreement entered into between the plaintiff and Fred Hosmann. Attached as an exhibit to the complaint was a copy of the will dated November 21, 1936.

The answer of the defendant denied the material allegations of the complaint and particularly denied that any such contract had been entered into or that plaintiff had worked on said farm without adequate remuneration. She further alleged that she and Fred Hosmann occupied the farm as their homestead from the date of their marriage until the date of Hosmann's death and that she is still in possession of said premises.

Briefly, the evidence of plaintiff, Fred Wurth, shows that in June, 1912, shortly after the death of his mother, he went to live on the Hosmann farm with his maternal grandmother and two bachelor uncles, Henry and Fred Hosmann; that he graduated from grammar school in 1917; that he continued to live and work on the farm but never received any pay for his work until 1920; that his father died previous to 1920 and up until that time his father had bought all his clothes and furnished him with spending money; that his uncles then began to pay him $12 a month for his services on the farm and he purchased his own necessities from that salary. After two years he told his uncles he needed more money and so they paid him $15 a month. At the time they began paying him $15 a month, the plaintiff was about 20 years of age

and they continued paying him this salary until 1925; that during the year 1925 the Hosmann brothers sold twenty acres of the farm for $20,000 cash. After that they gave him $25 a month until 1928. Plaintiff then asked his uncles for more money and after two or three days' deliberation they told him they had decided to pay him $30 per month, but they couldn't give him any more at that time and that "they were going to take care of me later on, as the farm would be mine." Plaintiff was paid $30 a month until June, 1936. In the meantime, Henry Hosmann had died and plaintiff told his uncle, Fred Hosmann, that he had twice as much work to do since Henry was gone; that he was then 33 years of age and had prospects of better jobs that would pay him more money; that Fred Hosmann replied to this statement by saying that he knew he was not paying plaintiff enough money, but he said, "If you will stay with me and we will run the farm the same as we did before, I agree right now to leave you the farm and all the implements, livestock and household goods after I die." Plaintiff replied that he would like to see that in writing and Hosmann said he would make arrangements to have it put in writing. Later Hosmann showed plaintiff a will he had executed on November 21, 1936, and stated, "Fred, I have made my Will and I want you to read it." After reading it, Hosmann asked plaintiff if he was satisfied and plaintiff replied that he was.

By the terms of this will, Fred Hosmann devised and bequeathed to his nephew, Fred Wurth, by legal description, the farm of 55.742 acres and all of the personal property located on the premises. The will was prepared by Thomas W. Winton, Hosmann's lawyer, duly signed and sealed by Hosmann and properly attested by three witnesses. At that time plaintiff was 33 years of age and unmarried. After that date he continued to live on the farm and received for his services $30 per month until 1940. During the year 1940 he did not receive any money

and from 1940 on, plaintiff furnished most of the money for running the farm, the food, repairs, etc. Five years later in May, 1945, Lottie Irene Hosmann told him she now owned the farm and ordered him off. Between 1943 and 1945 she did not live on the farm but resided at a tavern about two blocks from the farmhouse. From 1943 on Fred Hosmann purchased the food. In 1932 plaintiff received $700 as a result of the accidental death of his father, and approximately $4000 from the estate of his mother. When he left the farm, Fred Hosmann owed him $1500 for back wages and for expenses he had advanced for the running of the farm, and he took cattle and machinery in place of payment. After leaving the farm, plaintiff asked Hosmann many times about their agreement and Hosmann replied that he would have to see Lottie because "she is running things now."

The plaintiff was corroborated by substantial witnesses. Thomas W. Winton, a lawyer of standing, William J. Narten, a reputable licensed real-estate broker, and Mildred Reinke, all of whom testified that frequently and repeatedly they asked the Hosmann brothers and Fred Hosmann why they did not pay Fred Wurth higher wages, and that each time they received the same reply, "Well, he is going to get the farm anyhow. One of us will see that he gets the farm." "Oh, Fred is all right, he knows that everything we have is his if he stays with us and works the farm." "They had their agreement about if he worked the farm and stayed there, they would leave everything to him," also, many and often repeated similar statements. It appears from the record that Fred Wurth was receiving $300 a year as wages, when other farmhands in the vicinity were receiving $1000 per year. Thomas W. Winton had represented the Hosmann brothers in legal matters for years. William J. Narten had performed real estate services and also for many years had looked after insurance ·matters and income tax matters for the Hos-

manns. Mildred Reinke had been for twenty years the bookkeeper for the Narten Realty Company, and knew Fred Hosmann well during that period of time.

The defendant testified that after she married Fred Hosmann in 1943, she moved to the farm and lived there until her husband died; that Fred Wurth lived at the farm for one year after the marriage and then left of his own accord; that the first time she knew plaintiff made any claim to any of Hosmann's property was in the year 1947.

Lottie Irene Hosmann was in the tavern business and the first time she met Hosmann was when she sought his consent to establish a tavern in the neighborhood of the Hosmann farm. She had previous to her marriage with Hosmann been twice married and twice divorced. The proof shows that after the marriage both she and Fred Hosmann spent most of their time at the tavern. There was further proof that Fred Hosmann drank heavily during the last three years of his lifetime.

John Killips, an insurance broker, had procured various tavern licenses for the defendant around the perimeter of Chicago. Although not a lawyer and not admitted to practice law, he prepared the deeds running from Fred Hosmann and wife to Nettie Phillips, and the deed from Nettie Phillips back to Lottie Irene Hosmann and Fred Hosmann in joint tenancy. He also drafted the will of Fred Hosmann in 1944, as well as a bill of sale and other instruments for the defendant. Other friends of the defendant in and around her tavern testified in her behalf but not impressively. The master in chancery who heard the testimony and saw and observed the witnesses, made the following comment in his report with reference to the defendant's witnesses: "The credibility of the testimony of many of the witnesses produced by the defendant is, to say the least, doubtful. From observing them on the stand, it was obvious to the Master that they displayed lack of candor, and as

to many important factors their testimony was not worthy of belief."

The defendant, in her brief, contends that section 2 of the Evidence Act (Ill. Rev. Stat. 1949, chap. 51, par. 2,) rendered plaintiff incompetent as a witness to testify in his own behalf. Under that section if defendant had been defending this cause as an heir, devisee or legatee, the statute would apply. However, the exhibits show that Fred Hosmann and Lottie Irene Hosmann, by warranty deed on October 12, 1943, conveyed the premises in controversy to Nettie D. Phillips, a widow. On the same date Nettie Phillips, a widow, conveyed the same property to Fred Hosmann and Lottie Irene Hosmann in joint tenancy. All the interest acquired by the defendant accrued to her under the deed from Nettie Phillips, and she is not defending as an heir, legatee or devisee, but as a grantee. It follows, therefore, that the statute does not apply and the plaintiff was not precluded from testifying. *White* v. *White,* 231 Ill. 298; *Johnson* v. *Fulk,* 282 Ill. 328; *Klajbor* v. *Klajbor,* 406 Ill. 513.

We are in accord with the statement of defendant that the proof which will justify a court in decreeing specific performance of a parol contract must be clear and conclusive and there must be no reasonable doubt that the contract was made and all of its terms clearly proved. In *Weidler* v. *Seibert,* 405 Ill. 477, we said, "it has repeatedly been held that where an oral contract to convey or devise real estate is claimed, the evidence must be clear and convincing, and that it should be scrutinized carefully by the court, if it appears to be contrary to the provisions of a will; [Citations] · that evidence establishing the contract must be sufficiently definite to show the property involved, and the promise upon which the conveyance or devise was to be made." It was further stated in that case, "And where a promisor makes a will disposing of the property involved

in a manner other than promised, it will be considered but does not prevent enforcement of the contract. *Chambers* v. *Appel,* 392 Ill. 294." Counsel have quoted extensively from the cases of *Rigolio* v. *Knopf,* 390 Ill. 258, and *Wilger* v. *Wilger,* 409 Ill. 58.

In the *Rigolio case* we stated there was a material conflict in the evidence; that none of the immediate friends of the decedent testified as to the making of or the existence of the contract; that three years after the date of the alleged contract the deceased made and executed a new will in which he named his nephew and niece as his sole beneficiaries; and that, for 14 years prior to the death of the testator, the plaintiff was otherwise employed, which necessitated her absence from his home from about 7:00 A.M. until about 7:00 P.M.

In the *Wilger case* we held that the proof contained expressions of intention but failed to show any contract of sufficient definiteness to warrant a court of chancery in granting specific performance.

In the present case, the evidence is conclusive that the contract was made, and the plaintiff, over a long period of years, was devoted to performing his part of the contract, working for extremely small wages and sacrificing any opportunity to better himself through other employment. The corroborative testimony is practically undisputed and there can be no doubt about the credibility of plaintiff's witnesses. The services performed by plaintiff were satisfactorily proved. "Courts of equity grant relief in such cases on the theory that the parties cannot be placed *in statu quo* or damages awarded which would be full compensation." *Anson* v. *Haywood,* 397 Ill. 370.

The master in chancery heard the evidence; it was reported to the chancellor, who considered it on exceptions, and when the master's findings of fact are approved by the chancellor, they will not be disturbed, unless they are manifestly against the weight of the evidence. We believe the

present case comes well within the realm and the rule laid down in well-considered cases in this court. (*Fleming* v. *Dillon,* 370 Ill. 325; *Anson* v. *Haywood,* 397 Ill. 370; *Chambers* v. *Appel,* 392 Ill. 294; *Weidler* v. *Seibert,* 405 Ill. 477; *Holmes* v. *Ackley,* 400 Ill. 372.) The decree ordered that the real estate described in the complaint be impressed with a trust in fee simple in favor of the plaintiff, and that the defendant, Lottie Irene Hosmann, convey the fee simple title to said property unto the plaintiff, Fred Wurth, which we think in this case was correct.

The decree of the circuit court of Cook County is, therefore, affirmed.

*Decree affirmed.*