FLORA MAY WESSEL, Appellee, vs. VICTORIA S. EILEN-
BERGER et al.—(FREDERICK A. HIBBERT, JR., et al.,
Appellants.)

*Opinion filed March 17, 1954—Rehearing denied May 19, 1954.*

Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, (John J. Faissler, and C. Harker Rhodes, Jr., of counsel,) for appellants.

Victor E. LaRue, and Eugene A. Tappy, both of Chicago, for appellee.

Mr. Justice Hershey delivered the opinion of the court:

Flora May Wessel, appellee, brought this action in the superior court of Cook County, seeking specific performance of a contract and agreement wherein Edmund J. Stafford, deceased, promised to devise and bequeath to her a certain farm and all personal property thereon, in return for certain promises and services on her part. The suit was brought against Victoria S. Eilenberger, in her own proper person and as administratrix of the estate of Edmund J. Stafford and conservator of the estate of Margaret Stafford, an incompetent; Margaret E. Stafford, an incompetent; Frederick A. Hibbert, Jr., and James S. Hibbert. Victoria S. Eilenberger and Margaret E. Stafford were the sisters of Edmund J. Stafford, and Frederick A. Hibbert, Jr., and James S. Hibbert are the children of a deceased sister of Edmund J. Stafford. The cause was referred to a master in chancery who found the

issues for the appellee, plaintiff below. The master's report was approved by the superior court and a decree entered in accordance with the conclusions of the master. An appeal has been taken to this court from the decree of the trial court, a freehold being involved.

The complaint filed by the plaintiff alleges that on September 4, 1915, plaintiff was employed by deceased as secretary in his real-estate office at $7.50 per week. The salary was increased in 1925 to $30 per week and further increased in January, 1945, to $40 per week. She was regularly employed by him until his death. From 1930 to March 15, 1939, deceased visited plaintiff in a home she leased in Spring Grove, Illinois, substantially each and every weekend, Friday to Monday. During said period plaintiff claimed to have nursed him, looked after his welfare, and cooked his special dietary meals. About January 1, 1938, plaintiff purchased a house and lot at Battles Wharf, Alabama, prepared to quit her employment, give up her home, and make her permanent residence there.

The complaint further stated that on or about February 15, 1939, plaintiff and deceased entered into an agreement wherein deceased promised to buy a farm, equip it and make a will devising and bequeathing same to the plaintiff. In consideration thereof plaintiff was to give up her home at Spring Grove and her idea of moving to Battles Wharf, Alabama, remain deceased's secretary, move her household effects and chattels to the farm, where she would make her home and reside, manage and operate the house, look after the farm, household effects, chattels, tools, implements and machinery, continue to nurse deceased, look after his welfare, and supervise, prepare, and cook his meals to the requirements of his diet, and refrain from getting married during his lifetime.

The complaint also alleged that on or about the 25th day of March, 1939, deceased purchased in his own name

a farm known as the Lisadian farm. It is this farm which is now in controversy. Deceased improved the farm and buildings and purchased household effects, chattels, tools, implements, and machines. Plaintiff asserted she performed each and all of her agreements until the death of Edmund J. Stafford on September 3, 1947. Wherefore she prayed specific performance of the contract and agreement, and that the court decree execution of sufficient deeds of conveyance to plaintiff of the farm and household effects, chattels, tools, implements and machines.

The answers of the defendants admitted plaintiff was employed as deceased's secretary from 1915 until he died, that her salary had been regularly paid, that from 1930 to 1939 deceased visited plaintiff at her Spring Grove home almost every weekend and that during that period plaintiff nursed him, looked after his welfare, and supervised, prepared and cooked his meals to conform with his ulcer diet, and that on March 25, 1939, deceased purchased the farm and bought many household effects, tools, implements and machines. They neither admitted nor denied that plaintiff leased and furnished a home at Spring Grove, that she purchased a home at Battles Wharf and prepared to quit her employment and reside there, that she gave up her Spring Grove home and gave up her idea of moving to Battles Wharf, that she moved her household effects to the farm, and that she refrained from getting married during deceased's lifetime. They denied all of the other material allegations of her complaint.

The answers pleaded the Statute of Frauds; that another action was pending wherein plaintiff filed a claim in the probate court of Cook County in the matter of the estate of Edmund J. Stafford alleging breach of a contract to make a will; that plaintiff was paid in full for her services; that the contract is illegal and void as being in restraint of marriage; that there was want of consideration for the alleged promises of decedent; that there was

no mutuality of obligation; that Victoria S. Eilenberger, as administratrix of the estate of Edmund J. Stafford, and Estelle Campbell are necessary and indispensable and must be added as parties defendant; and that plaintiff has an adequate remedy at law.

By her reply plaintiff avers that the contract and its performance on her part is without the Statute of Frauds; denies the claim filed by her in the probate court is a bar to this action, said claim being in part for a note executed by deceased; admits that Victoria S. Eilenberger, as administratrix of the estate of Edmund J. Stafford, is an indispensable party and states she is named as a party defendant; denies Estelle Campbell is an indispensable party, and denies each and every other material allegation of the answer.

The cause was referred to a master in chancery on November 14, 1950, who heard proof. After the proofs were closed Victoria S. Eilenberger resigned as administratrix of the estate of Edmund J. Stafford and as conservator of the estate of Margaret E. Stafford. Shortly thereafter she died testate and her death was suggested to the court. Her heirs-at-law were made parties defendant and subsequently answered. Frederick A. Hibbert, Jr., was made administrator of the estate of Edmund J. Stafford and Jean Rawn was named conservator of the estate of Margaret E. Stafford.

The master's report recited the testimony heard relating to statements attributed to deceased from which, along with other evidence, he found that the court had jurisdiction of the parties and subject matter, that there was an agreement between plaintiff and Stafford as alleged, that plaintiff had fully and completely performed the terms of the agreement, that she could not be adequately compensated at law because of the Statute of Limitations, that there was no merit in the defenses raised by defendants, and he recommended that a decree be entered find-

ing plaintiff entitled to receive the farm and personal property thereon and the fees and court costs advanced by her. Objections thereto were allowed to stand as exceptions. Decree was entered on June 11, 1953, decreeing specific performance of the contract. Hearing on the exceptions was had on June 23, 1953, and decree for specific performance was entered on July 2, 1953, substantially identical to that entered on June 11, 1953.

It is first urged by defendants that plaintiff failed to prove the existence of the terms of the alleged contract with sufficient certainty to take the case out of the Statute of Frauds. In support of this contention defendants aver that the evidence of the existence of an oral contract to devise the property to plaintiff is not so clear, explicit, and convincing, nor so certain, definite and unequivocal in its terms, and is not so sufficient as to prove the existence of the contract in the terms alleged so as to take the case out of the application of the statute.

The cases allowing specific performance to enforce an oral contract to will or devise property to another, in consideration of services to be rendered, are universally those in which a gross fraud would be suffered by the promisee if specific performance were denied. The courts of equity will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud, and if the facts are such that it would be a virtual fraud to permit the defendant to interpose the statute, a court of equity will not listen to that defense. Limitations placed upon this equitable rule are (1) that the contract must be proved by competent evidence, and be clear, definite, and unequivocal in terms, and (2) that it must appear that the promisee cannot be made whole by damages, or by other adequate remedy at law. The following principles are applicable to such a case: (1) Courts of equity accept with caution evidence offered in support of a contract to make dis-

position of the property of a deceased person different from that provided by law; (2) the contract to support it must be clear, explicit and convincing; (3) the contract may be based upon services, support and care, and if the value of such services may be estimated in money, for which a recovery might be had, such performance will not take the contract out of the Statute of Frauds, except in case the Statute of Limitations bars recovery, or where services cannot be adequately compensated; (4) specific performance is not a matter of right, but rests in the sound discretion of the court, to be determined from all the facts and circumstances; and (5) it is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief, and where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied. *Linder* v. *Potier,* 409 Ill. 407.

George B. Hoffman, the real-estate broker who sold the Lisadian farm to Stafford, testified that he often visited the farm and observed the plaintiff working around the farm, cleaning up and planting shrubbery, working around the house getting meals, driving truck, cars and tractors. He stated that in March, 1947, he chanced to meet Stafford on the premises of an implement company at Woodstock, Illinois, and asked him if he would consider selling the farm. Deceased answered that he wouldn't sell it since he was going to give it to plaintiff. He informed the witness that plaintiff had worked hard, they planned and worked together, hence he was not interested at all in selling the farm. Witness also testified that plaintiff's work as a secretary to Stafford and on the farm was worth $90 per week.

Arthur J. F. Lowe appeared as a witness for the plaintiff. He stated that he was a plumber and did business with deceased for 27 years amounting to from $500 to

$3000 per month. His business was located in the same building where deceased maintained his office, and his business is now operated by his son Howard G. Lowe. He testified that he was often at the farm on weekends and observed plaintiff there, looking after the place and cooking for the men he might have there, and preparing meals and medicines for Stafford. In reply to his question, deceased told him that if anything happened to him the plaintiff knew just what she wanted to do with the place. On another occasion deceased told witness that both he and his wife should have wills.

Howard G. Lowe, a plumbing and heating contractor and son of Arthur J. F. Lowe, knew deceased for thirty years and helped to do his plumbing for 27 years. When working at the farm he noticed that plaintiff did all of the cooking and housework, laying out work for the men and changing layouts. She cooked Stafford's special diet and saw to it that he had his medicines at the prescribed times during the day, even bringing them to him in the field. Deceased at one time, upon inspecting some plumbing work at the farm, said, "If that is the way she [plaintiff] wants it, that is perfectly okay, because after all it is her place and she should have it the way she wants it." In July of 1947, upon asking deceased why he wanted to do all the extra work in the kennels and everything, deceased replied that he wanted to get as much done for plaintiff as he could before something happened to him. Witness observed that at the farm plaintiff did the cooking and housework, took care of Stafford's ailments, medicines, etc., supervised the farm work, cut grass, worked in the garden and laid out work for the men. She did the plumbing layout work both at the farm and in the buildings managed by deceased. He always thought the farm was the plaintiff's until the conversation about the kennels.

. Ben H. Stegman, a carpenter, testified he worked for deceased from 1919 to the day he died. He had often

visited plaintiff's home in Spring Grove and noticed quite a few pieces of furniture at the Lisadian farm that he had previously seen at Spring Grove.

Lily Bigley, a housewife, lived next door to deceased's office and worked in the office from 1940 until his death. She answered the phone, collected rents and interviewed people who came to the office. She worked on Mondays and when plaintiff was not there. She observed the State representative inspect deceased's lockbox and that he did not take the papers out of the box or call off what each document was, except to state that there was no will.

George Wainwright, a decorator, worked for deceased from 1931 to 1946. He went to Spring Grove at Stafford's request and helped Dee Hagberg move furniture and shrubbery to the Lisadian farm. There were three or four truck loads of furniture. Plaintiff once told him that she had bought a home in Battles Wharf, Alabama, and intended to retire and move there. Thereupon deceased declared that she was not, but was going out on the Lisadian farm and stay there. He observed plaintiff on several visits to the farm where she did a little bit of everything—cooking, cleaning house, working in the garden, and everything. He once spent several days at the farm with deceased who remarked that if anything happened to him the plaintiff would come out there and stay and not mind to be alone.

Alma Kuhr, who quite frankly admitted to being a close friend of plaintiff and that she would like to see plaintiff win, testified she saw plaintiff and deceased two or three times per week for many years. She observed that all the furniture that plaintiff had at Spring Grove was later in the house at the Lisadian farm. She testified that plaintiff cooked the meals for the caretaker at the Lisadian farm and fixed enough to last him during the week. She also did the caretaker's laundry. Plaintiff did all of the cleaning and cooking at the farm, made drapes,

was in charge of the garden, did all the canning, and planted bulbs. Witness had visited in the home purchased by plaintiff at Battles Wharf and was aware that she intended to retire and live there. Miss Kuhr recounted some conversations she had with deceased in which he once said that he had told plaintiff that if she did not go to Battles Wharf he would leave all the property at the farm to her. On another occasion deceased told her that his family would never see the farm.

Rose Winn was a friend of plaintiff's and visited weekly in her home in Spring Grove, and subsequently at the Lisadian farm. She helped plaintiff pack her linens, chinaware, bric-a-brac, bedding and other things to move to the farm. She observed that fifteen loads of shrubs and furniture were moved from plaintiff's Spring Grove home to the Lisadian farm. At the Lisadian farm plaintiff cooked all the meals, picked and canned the fruit and vegetables, and drove the tractor and trucks. She admitted she would like to help plaintiff win the suit.

Grace Hutchings, a friend who often visited at the Lisadian farm and who had sold to plaintiff the house at Battles Wharf, Alabama, testified in plaintiff's behalf. On one occasion, in the garden at the Lisadian farm, deceased told witness that his relatives had never done anything for him and that he was going to leave the farm to plaintiff because she had cared for him for thirty years and he had agreed to leave it to her if she continued to do so.

Catherine Nolan, an aunt of plaintiff, testified that in addition to her duties as secretary plaintiff spent her weekends at the farm housekeeping, cooking deceased's meals, and preparing his medicines. On the occasion of the death of plaintiff's mother, Stafford told this witness that he had bought a farm and he had agreed to will it to plaintiff if she would take care of him, give up her home at Spring Grove, not go to Battles Wharf to live, and not marry while he lived. Subsequently, when Mrs.

Nolan first visited the farm plaintiff repeated substantially the same story concerning the agreement. At the same time he told the witness that upon first seeing the farm after the purchase plaintiff had told him she thought she would back down on her agreement not to go to Battles Wharf, because the place looked so bad, but she didn't.

The record indicates that plaintiff had worked for Stafford for several years prior to the time of the making of this alleged contract and that a continuation of her services was a part of the inducement therefor. Plaintiff had indicated an intention to retire and move to her home at Battles Wharf, Alabama. It is shown that she kept the books, collected the rents, made out leases, and made layouts and drawings and gave out orders to the tradesmen hired to repair or remodel the buildings owned or managed by deceased.

It is admitted that her salary was never more than $40 per week, although Frederick A. Hibbert, Sr., a brother-in-law of deceased and father of two of the defendants, claimed that plaintiff told Mrs. Eilenberger that she was additionally compensated with clothes and meals. Mrs. Victoria Eilenberger, original administratrix of the estate of deceased, failed to corroborate this statement in her testimony. There is evidence in the record that plaintiff's work at the office and farm was worth about $80 to $90 per week.

Appellants admit that deceased was an ill man and subjected to necessary administration of medicines, and requiring a strict diet. The record indicates he purchased the farm because of his health, in order to be out of doors more frequently. Plaintiff had prepared the diet and medicines for deceased for many years at her Spring Grove home and he wished her to continue to do so.

It is undisputed that plaintiff did not give up her employment and move to Battles Wharf, continued to care

for deceased and prepare his meals and medicines, and did not marry while he lived. She likewise gave up her Spring Grove home and made her home at the Lisadian farm with deceased, although they continued to live in Chicago during most week days. Plaintiff moved her furniture to the Lasidian farm where it was used in the home, and several truck loads of shrubs were taken from her Spring Grove home to the gardens on the Lisadian farm. The testimony reviewed above indicates she worked continuously at the farm at whatever job was to be done, directed much of the remodeling, and laid out and supervised the work of the caretakers and others employed on the farm. She did the cleaning, cooking and laundry.

The uncontradicted testimony of the witnesses presented by the plaintiff is clear and adequate to establish complete performance by the plaintiff of the contract as alleged in the complaint. Moreover the evidence presented clearly demonstrates that the performance was definitely referable to the contract, since otherwise plaintiff would not have left her home in Spring Grove for the Lisadian farm, or would have retired and moved to Battles Wharf, Alabama. *Stephens* v. *Collison*, 313 Ill. 365, 374.

Alma Kuhr, Catherine Nolan, and Grace Hutchings each testified to one or more conversations with Edmund J. Stafford wherein he stated that he and plaintiff had an agreement whereby she would make her home at the Lisadian farm, care for and nurse him, refrain from retiring as his secretary and moving to Battles Wharf, and promised not to marry while he lived. In return he promised to will all of the Lisadian farm property to her. It is true that all three of these witnesses were close friends of plaintiff and one was related to her—nevertheless they frankly admitted their friendship and, with the exception of Catherine Nolan, stated that they wished to see plaintiff win this lawsuit. The evidence presented by plaintiff indicates full performance on her part of every term of the

agreement as stated by deceased in these conversations, and moreover proves performance of additional terms existence of which she admits although never stated to other persons by deceased. The testimony of each of these witnesses corroborates that of the other.

Mrs. Victoria Eilenberger, one of the defendants, did testify that plaintiff asked permission to have first chance to buy anything disposed of about the farm. Such a statement indicates no more than a desire on the part of Miss Wessel to acquire the farm or certain articles there situated if she was unable to secure her claim. Mrs. Eilenberger did testify that deceased had stated that the farm would be a good place for their incompetent sister, Margaret some day. Margaret's nurse, Hortense Harvey, testified that deceased told her and Margaret that he was considering buying a place in Illinois to be his and her home for the rest of their lives. Neither statement conflicts with the existence of an agreement with plaintiff. He never said the farm would be Margaret's. Moreover, he never made it a home for Margaret, even if it were his intention to provide her a home. A home is not coincident with a gift or ownership. Moreover, there is an entirely conflicting statement by another defense witness, John J. Wolf, that Stafford said he and his Chicago landlady were going to retire to his farm soon. While such statement could be discounted as merely friendly conversation or jest, it certainly connotes no lack of intent to will the home to plaintiff in conflict with any agreement they might have. The master who saw and heard the witnesses, and the superior court which reviewed their testimony, found nothing in the above testimony to make them doubt the existence of the contract or the terms thereof. In full consideration of the testimony presented by the record we can do no less. The evidence of the existence of this agreement between plaintiff and deceased, while

not as perfect as might be desirable, is nevertheless clear and convincing. The statements of decedent to these witnesses concerning the contract, while not direct evidence, are, when coupled with the acts of the parties and the fact that they are against his own interest, sufficient to justify its enforcement. *Willis* v. *Zorger*, 258 Ill. 574.

Defendants contend that the plaintiff failed to prove that she substantially changed her position for the worse or that her acts alleged to have been in part performance of the contract were clearly referable thereto, and hence the proofs were insufficient to take the case out of the Statute of Frauds. The evidence does establish, and it is uncontradicted, that plaintiff gave up her stated intention to retire from her employment and to make her home in Battles Wharf, Alabama. Moreover, she moved to the farm where she did all of the cleaning of a larger home, did all of the cooking for not only herself and decedent but for the caretakers, and in addition did the laundry for the caretakers. She performed much manual labor in the remodeling and building at the farm, in the landscaping thereof, and was in charge of or supervised the work at the farm. She performed many tasks that she had never before been required to do. She continued to nurse and care for the decedent. Her furniture was used in the partial furnishing of the farm home, and the shrubs were moved from her Spring Grove home to the farm. In addition she gave up her home at Spring Grove. The salary that she received during this time is indicated to be much less than would ordinarily be paid for such services. The record indicates that she performed all of the terms of the contract as shown by this record—and more. Plaintiff gave up her intentions of retiring and making her home in Battles Wharf, Alabama, where she had prepared a home for herself, and while she continued to perform all of the services she had performed prior to the

making of the alleged contract, she took on new, increased, and· additional duties and services. Without doubt she sufficiently established that she had changed her position for the worse, and that her acts were referable to the contract. *Wurth* v. *Hosmann*, 410 Ill. 567; *Yager* v. *Lyon*, 337 Ill. 271.

: . The defendants assigned as error the failure of the court to sustain their exceptions to the master's report. Among those exceptions was one that the master erred in finding that plaintiff could not be adequately compensated by an action at law since the Statute of Limitations would bar any large portion of her claims for services. Defendants, however, failed to argue this point. Failure to argue this point assigned as error is deemed a waiver thereof. *People ex rel. Montgomery* v. *Lierman*, 415 Ill. 32.

The contract has been clearly and convincingly proved by competent testimony. Plaintiff has established that she changed her position substantially for the worse, that her acts. were in performance of the agreement, and it would be unjust to her to permit the contract, fully performed on her part, to remain unexecuted. Plaintiff's proof has met all the requisites necessary to take the contract out of the Statute of Frauds, and the trial court was properly within its sound discretion in decreeing specific performance. *Linder* v. *Potier,* 409 Ill. 407.

One final point urged by defendants is that the court erred in entering the decree for the reason that indispensable persons were not made parties to the suit. It is contended that Victoria S. Eilenberger was a sister and heir of decedent, and administratrix of his estate, and that though named in her representative capacity, no summons was issued or served on her in that capacity. Frederick A. Hibbert, Jr., successor administrator, a party in his individual capacity as heir, was never served nor did he ever appear in his representative capacity. Moreover, Jean Rawn, a daughter and heir of Victoria S. Eilenberger,

was never made a party to the suit in her representative capacity when she succeeded Victoria S. Eilenberger as conservator for Margaret E. Stafford, incompetent. Jean Rawn and her sister Betty Van Horn were named trustees of Victoria S. Eilenberger's property on her death during the pendency of the suit, and Jean Rawn was named executor of her will, yet neither of them were made parties in their representative capacities, although they were parties individually.

It is undisputed that each of these parties was served with summons and properly made parties to this suit in their individual capacities. Each of them answered in their individual capacities. They were all properly named as parties to the suit in their representative capacities, or guardians *ad litem* were appointed to represent the minor heirs' interests. The fact that the designation of a party is omitted, inaccurate or incomplete may not be fatal under the circumstances, as where the omission is supplied or the inaccuracy is cured in another part of the writ or by the complaint, petition, or statement of claim which accompanies or is served with the process. (72 C.J.S., Process, sec. 15.) The office and purpose of process is to advise a defendant of the fact that suit has been commenced, of the names of the parties, and the time and place, when and where he must appear and plead, answer or demur. Without doubt each of these persons were apprised of the fact that the suit was commenced or pending, of the names of the parties and other requisites. Each of them answered individually, and in their answers averred that they were named as parties in their representative capacities but not served. The purpose of process was accomplished and the failure to serve them in their representative capacities was cured by the complaint and order of the court acknowledging the suggestion of the death of Victoria Eilenberger and the substitution of the other parties in their individual and representative capacities.

No error warranting reversal being manifest in this record, we are not disposed to disturb the determination of the superior court of Cook County granting specific performance of the oral agreement. The decree of the superior court of Cook County is hereby affirmed.

*Decree affirmed.*