(No. 33688.—)
SUSAN JATCKO *et al.,* Appellees, *vs.* CECELIA HOPPE,
Appellant.

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

OMER POOS, of Hillsboro, for appellant.

SNELL & SEYFRIT, and HEMPHILL & KELSEY, both of
Carlinville, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Defendant Cecelia Hoppe has appealed directly to this
court from a decree of the circuit court of Macoupin County
ordering partition of certain premises owned by the de-

cedent, Elizabeth Tomso, in accordance with a will devising all her property equally among her daughters, and denying defendant's counterclaim, which asserted ownership of the property under an oral contract by decedent in her lifetime to give the property to defendant either by will or deed.

The issue presented in this cause is whether the evidence establishes that decedent in her lifetime orally contracted to give the property to defendant by will or deed under circumstances which warrant specific performance.

From the record it appears that plaintiffs and defendant, Cecelia Hoppe, were daughters of Elizabeth Tomso; that defendant and her husband, shortly after their marriage, lived and engaged in business in Collinsville for some 16 months, and then returned in 1938 to Mt. Olive, and, at the request of Elizabeth Tomso, who was then 65 years old and suffering from arthritis, moved into her home. They remained there and cared for decedent for a period of approximately 15 years, until a few weeks before her death when the latter's mental and physical condition made it impossible for them to live in the house.

It is alleged in the pleadings that in 1940 Elizabeth Tomso agreed with defendant and her husband that if the latter would excavate the basement, put in a furnace, remodel the house, and make other repairs, without any expense to Elizabeth Tomso, she would make a will devising the real estate to defendant. Defendant alleged further in her counterclaim that she and her husband proceeded to make the repairs and improvements and fully performed their part of the contract, and that although decedent originally made a will pursuant thereto, it disappeared. Defendant contends, nevertheless, that the contract should be specifically enforced, and that the subsequently executed will should be disregarded insofar as it was inconsistent.

In support of these allegations, defendant offered undisputed testimony that at the time defendant and her

husband moved into the house it was in need of repairs and had no furnace, basement or other modern conveniences. Moreover, the evidence as to repairs and improvements made and paid for by defendant and her husband was corroborated by the lumber dealer and the individual who installed the furnace and water heater; and was admitted by three of the plaintiffs and the executor of decedent's estate. These improvements included the excavation of a basement and installation of a concrete floor; the installation of a furnace, a hot-water heater, a sewer, a picture window, and an aluminum awning; the construction of three bedrooms, a hallway, a new kitchen area, including the laying of a new floor; the elimination of certain partitions; the repair of the roof, of the electric wiring and plumbing; the painting of the entire house several times; and the removal of trees which were replaced with dirt.

The evidence relating to the agreement of decedent to give the property to defendant is provided by the testimony of numerous neighbors and family acquaintances. Elmer Droste, an attorney from Mt. Olive, stated that he visited the Tomso residence twice in 1945 and shortly after the new year in 1946 for the purpose of having Cecelia Hoppe interpret for him the Slovak language. He stated that on one occasion Otto Hoppe, husband of defendant, was tearing out some wainscoating in the kitchen, and that when he remarked about the work in the presence of Mrs. Tomso, she said that Cecelia and her husband had been making many changes in the property, that she had given the property to Cecelia and she and her husband could do with it as they pleased. Droste asked Mrs. Tomso just what she had done, and she replied that she made a will. When he suggested, "What you should do if you are giving the property to Cecelia is to give it to her by deed, and keep a life interest for yourself," she replied that she didn't need to because she had made a will and all the children knew

that "Cecelia was to have the house and understood it was to be that way." She asked Droste to read the will, and he did. He testified that it was a form type will, partly typewritten and partly printed, prepared in 1941 or 1942 by Henry Johnson, and gave Cecelia the house, the household furniture, and divided the rest of the property among all the children equally. It named one daughter executrix, and the two witnesses were Henry Johnson, and a son-in-law, John Yancik.

On another occasion when Droste visited the home and commented to Otto Hoppe about the new changes in the house, Mrs. Tomso again stated that the property was Cecelia's, and again rejected Droste's suggestion that she make a deed, by stating that she had a will which gave the property to Cecelia.

The witness Barbara Kuzia, a neighbor of some 50 years, testified that every time she visited the house she noticed new improvements, such as the basement, the furnace, the extra bedroom and the kitchen, and that whenever she admired all that was done in her conversation with Elizabeth Tomso, particularly the time she came to visit on some Rosary Society business, the latter would say, "Cecelia's doing it all herself. That's hers. I don't have the money to do it with. She's fixing it, and that's the way she's gonna have it, 'cause it's hers." The witness testified that during the last time she talked to Mrs. Tomso, which was about a week or two before her death, Mrs. Tomso remarked that the house belonged to Cecelia, and said, "However, she fixed it up, that was how she was gonna have it."

Tom Hoppe, the grandson, testified to a conversation at the time the picture window was being hung, in which he suggested that grandma decide, and Mrs. Tomso replied, "It belongs to them, let them do as they please." She said that she didn't care if they put the picture window in or not.

The witness Andrew Kosalko, whose mother's home was next door to the decedent's house, testified that while painting his mother's house he was called over to the Tomso house because one of the children had been cut, and that while Cecelia took the child to the doctor he had a conversation with Mrs. Tomso in which she told him that it was nice for him to come all the way from Springfield to do the painting for his mother. He replied that he thought it was nice for Mrs. Tomso to have Cecilia live with her, do the shopping, take her to church, and work on the house. She agreed, and added, "It's not for me. I gave them the house and what they fix is for them."

Another neighbor, John Banovic, who lived close by for over 54 years and was well acquainted with Mrs. Tomso, testified that he had conversations with her many times about the house. On one occasion she commented upon some improvements he made on his own property, and when he replied, "Your place looks a whole lot better, too," she said, "Otto and Cecelia are doing that, and the way they are fixing it, they are fixing it for themselves." Both John Banovic and his wife, who was a neighbor of decedent's for over 16 years, testified that whenever they talked about the house with Mrs. Tomso she would always say that it belonged to Cecelia and her husband, and that they were fixing it up for themselves.

Otto Hoppe testified that after the burial of the decedent, while the family was having lunch in the basement of the Holy Trinity Church in Mt. Olive, the executor, John Jatcko, and plaintiff Anna Yancik came over to him, and Jatcko stated that he knew that Otto and his wife had done a lot of work on the old home and should have consideration for it more than the others. Mrs. Yancik then said that they should "make it legal," and that she would quitclaim her interest to Cecelia for $1.

Cecelia Hoppe also testified to a conversation on that

occasion, in the presence of her husband, Clem Dutchik, and Mrs. Yancik, in which Jatcko said, "Cecelia, I know what you went through and how much you spent on that house. You should have more consideration than the others." She replied, "I want the house, mother has always promised me the house." She further testified that her sister, Mrs. Yancik, stated at that time, "To make it legal I will sell my share for $1."

It appears further from the record that defendant and her husband moved from the premises a few weeks before decedent died, allegedly because of her abusive attitude due to her mental and physical condition, and that decedent executed a will shortly before her death, whereby she devised all of her property, both real and personal, in equal shares to her five daughters. Pursuant thereto the other four daughters of decedent instituted this partition proceeding.

On the basis of substantially the foregoing evidence the master found that although a previous will had been executed, it was not in operation, and that the current will governed the rights of the parties and was not affected by the facts asserted in defendant's counterclaim since they did not establish a contract to convey either by will or deed. Hence, he recommended that partition should be granted, and that defendant's counterclaim should be dismissed for want of equity. Objections were taken to the master's report, but were overruled by the court, which entered a decree for partition.

In determining the propriety of that decree it is incumbent upon this court to review the evidence in the light of established principles of law. Although a court of equity will enforce a contract to dispose of property by will, where it is based upon valid and just consideration, (*Scham* v. *Besse,* 397 Ill. 309,) nevertheless, courts accept with caution evidence offered in support of such a contract to make a disposition of property different from that provided

by law, and require the evidence to be clear and convincing. *Keller* v. *Joseph,* 329 Ill. 148; *Wessel* v. *Eilenberger,* 2 Ill. 2d 522.

In such cases, while specific performance is not a matter of right, it will be allowed if the contract has been performed by one party in such a way that the parties cannot be placed in *status quo,* nor damages awarded which would constitute full compensation. (*Wessel* v. *Eilenberger,* 2 Ill. 2d 522; *Gladville* v. *McDole,* 247 Ill. 34.) Thus, it has been held that where a parent makes a parol promise to a child to convey a tract of land if the child will take possession of, reside upon and improve the premises, and in reliance thereon the child does make improvements of a permanent and valuable character, a court of equity will decree specific performance of the agreement. (*Fouts* v. *Roof,* 171 Ill. 568; *Kurtz* v. *Hibner,* 55 Ill. 514.) However, where improvements are made in pursuance of such an oral contract they must be valuable and more than a tenant would make for his own comfort. *Yager* v. *Lyon,* 337 Ill. 271.

In the instant case, by reason of section 2 of the Evidence Act, (Ill. Rev. Stat. 1953, chap. 51, par. 2,) defendant was precluded from testifying as to the terms or execution of any oral contract with her deceased mother, and the contract, if any, must be gleaned largely from circumstantial evidence. From the testimony of the disinterested witness, Droste, it appears, and the master so found, that a will was executed by the decedent during 1941 or 1942 by which Cecelia was devised the property in controversy. The execution of that will followed the completion of major improvements undertaken and paid for by defendant and her husband, which included excavating and constructing a basement, and installing a furnace system and a water heater. This time sequence clearly supports the allegations that the improvements and repairs were undertaken in reliance upon decedent's agreement to devise the property

to defendant. The fact that after the execution of the will defendant and her husband made further major improvements, such as constructing a new kitchen, three bedrooms, and a garage, installing a picture window and aluminum awning, and painting the house, further indicates that defendant, in reliance upon the will and agreement, believed the property would be her own.

The existence of the agreement to convey the property to Cecelia is further substantiated by the testimony of Droste, as well as that of the neighbors, Barbara Kuzia, John Banovic, Mary Banovic, and Andrew Kosalko, who testified that whenever the improvements or changes in the house were discussed, decedent repeatedly said that the house belonged to Cecelia; that she and her husband made the improvements and could do whatever they wanted with it; and that however she fixed it, "that was the way she was gonna have it." Such comments made by decedent up to a week or two before her death indicate that decedent intended and believed that she had given the property to Cecelia, and do not merely suggest an intention to part with the property at some future time, as the master found. This rationale is further supported by decedent's comment to Droste that there was no reason to make a deed because she had given the property to Cecelia in her will, and all the children knew and understood that Cecelia was to have the house.

It is apparent, therefore, from all these circumstances—the actual execution of a will devising the property to defendant shortly after certain major improvements were completed, the continuous course of property improvement by defendant and her husband, and the statements by decedent that the property belonged to Cecelia—that there was substantial evidence from which to infer that a valid contract to give the property to defendant had been made by decedent. Although she originally performed her obligation under the agreement by devising the property to

Cecelia in the first will, her subsequent will constituted a breach of that agreement, and a failure to comply with the obligation therein. Inasmuch as defendant Cecelia Hoppe fully performed her part of the contract by rendering valuable consideration consisting of personal service to her mother and the expenditure of labor and money on substantial property improvements over a period of 15 years, for which defendant cannot be restored to the *status quo* by damages, the contract should be specifically enforced.

The case at bar is clearly distinguishable from *Yager* v. *Lyon,* 337 Ill. 271, cited by plaintiffs, where the personal services rendered by the promisee of a contract to devise extended only for a period of three weeks, and no improvements were made on the premises, nor did the promisee otherwise substantially change his position as defendant did in the instant case. Nor is *Wilger* v. *Wilger,* 409 Ill. 58, determinative, for the expenditures for repairs and improvements made therein were not made under the alleged contract, but pursuant to a leasehold interest.

On the basis of this analysis, therefore, it was error for the chancellor to deny defendant's counterclaim to the controverted property, and to order partition of the premises. The decree of the circuit court is reversed, and the cause remanded, with directions to enter a decree in accordance with the conclusions expressed herein.

*Reversed and remanded, with directions.*