Irene Cain, Plaintiff-Appellant, v. Lawrence Hougham, Executor of the Will of Lula B. Hougham, Deceased, Lucille Hougham and Lawrence Hougham, Conservator of the Estate of Lucille Hougham, an Incompetent, Defendants-Appellees.

Gen. No. 11,077.

Fourth District.

November 17, 1969.

Rehearing denied December 16, 1969.

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), for appellant.

Dunn, Dunn, Brady, Goebel, Ulbrich & Hayes, of Bloomington (William M. Goebel, of counsel), for appellees.

TRAPP, P. J.

The court heard evidence upon a complaint for specific performance of an alleged agreement to make a will devising real estate. It included therein a claim for compensation for services alleged to have been performed for and in behalf of the decedent, and for and in behalf of decedent's daughter. The latter's conservator is joined as a defendant but the complaint makes no further allegations concerning an alleged liability in the incompetent's estate. The abstract does not suggest that any claims for such personal services were filed in the respective estates prior to bringing this action for specific performance. The court granted defendants' motion for

judgment at the close of plaintiff's evidence. Plaintiff appeals.

The decedent, Lula B. Hougham, died July 29, 1963, at the age of 83, leaving a will executed in 1949, through which her daughter, Lucille, received all of the decedent's property. The real estate at issue was a house occupied by decedent and her daughter. Mrs. Hougham had a heart condition and was ill a large portion of the last ten years of her life. The daughter was an epileptic and required considerable care.

The plaintiff, Irene Cain, lived about 20 miles from Bloomington on a farm with her husband and family. She began doing housework for Mrs. Hougham in the early 1950's, and gradually spent more time there. Commencing about 1960 or 1961, Mrs. Cain was spending approximately three-fourths of her time at the Hougham home. Her most recent rate of compensation was $15 per day.

Thelma Johnson, a neighbor of Mrs. Hougham for 25 years, first knew Irene Cain in 1962 or 1963. She saw her hanging up clothes, doing housework, taking the Houghams shopping in the car, and cooking meals. Mrs. Johnson stayed at the home on one occasion when Lucille was taken to the hospital, and on one occasion when Mrs. Hougham was taken to the hospital. She said Irene Cain would come and stay nights and spend parts of weeks, or weeks there. Mrs. Hougham's health was frail. Lucille Hougham had to be watched constantly. Mrs. Johnson said on one occasion Mrs. Hougham said she didn't know what she would do without plaintiff to help.

Mary A. Nobling, who is a niece of Mrs. Hougham, visited her every four to six months and more often a year before her death. When she visited her, Irene Cain and Lucille Hougham were there. Mrs. Cain was taking care of Mrs. Hougham and Lucille Hougham, doing house-

work and cooking. Mrs. Hougham and Lucille were not able to take care of themselves physically. Mrs. Nobling had a conversation with Mrs. Hougham in her home in the spring of the year, out of the presence of Mrs. Cain and Lucille. She testified that Mrs. Hougham talked about how good Irene had been to her. She said she was going to change her will and said she was going to leave her house to Irene in payment for how good she had been to her. She testified Mrs. Hougham had said this on many occasions.

Mrs. Nobling also testified that at one time Mrs. Hougham said she was going to leave everything to the Houghams, that they were going to take Lucille into their home. She said Arlene Bane (Hougham) had agreed to this. Mrs. Nobling testified Lula Hougham and Lucille Hougham were in the hospital frequently in the last ten years of Mrs. Hougham's life. On redirect examination, Mrs. Nobling said the conversation about leaving the property to the Houghams was twenty years before. She also retracted an answer which had indicated this conversation was during the last three years of Lula Hougham's life.

A janitor, Shirley Rusk, said on one occasion, that Mrs. Lula Hougham said that maybe someday she would leave the house to him but he understood it as a joke. Edward Jackson, a painting contractor, testified that Irene Cain acted as housekeeper and nurse for Mrs. Hougham. He said that in 1956, 1957 or 1958, she wanted him and his wife to move in with her and take care of her, and in return he was to receive the house on Franklin Street. He did not accept the offer. He did know that she made the same offer to Irene Cain. He recalled occasions when Lucille had seizures, and occasions when both Mrs. Hougham and Lucille were bedfast with Mrs. Cain taking care of them. He did not know whether the offer to Mrs.

Cain included her moving into the Hougham home. He did not know whether Irene Cain even accepted Mrs. Hougham's offer.

Jane Ann Thomas, who is Irene Cain's daughter, testified that her mother was at the Hougham home three-fourths of the time between 1961 and 1963. Her mother stayed overnight much of the time. During the spring of 1963, Lucille Hougham lived at Irene Cain's home. After Mrs. Hougham's death in July, 1963, Mrs. Cain visited Lucille Hougham in a nursing home frequently.

Helen Bryan, a self-employed nurse, stated she took turns with Mrs. Cain, staying with Lucille Hougham when Mrs. Hougham was in the hospital. Helen Bryan was employed there the last three years of Mrs. Hougham's life. Mrs. Cain was there more frequently than Helen Bryan. Mrs. Hougham told Helen Bryan that Mrs. Cain would be well remembered.

██ Courts of equity will enforce a contract to make a will where it is based upon a valid consideration. However, the evidence of the contract must be clear and convincing. Jatcko v. Hoppe, 7 Ill2d 479, 131 NE2d 84; Harper v. Kennedy, 15 Ill2d 46 on 52, 153 NE2d 801.

█ Here the evidence falls short in several respects. At best, it appears to be testimony of Mary A. Nobling that Mrs. Hougham, out of the presence of Irene Cain, said she was going to change her will to leave her house to Irene Cain in payment of how good she had been to her, and the testimony of Edward Jackson that Mrs. Hougham had made the same offer to Mrs. Cain to leave her the house that Mrs. Hougham had made to Mr. Jackson. Mr. Jackson's testimony concerns conversations between Mrs. Hougham and himself, and does not relate directly to a statement from Mrs. Hougham to Mrs. Cain. There is no evidence that Mrs. Cain had a specific offer, or that she accepted it. In the case of Mr. Jackson, the

443

proposition required that he and his wife move in with Mrs. Hougham. This is why he refused the proposition. He did not know whether this requirement was in the proposition he was told by Mrs. Hougham had been made to Mrs. Cain.

There is no evidence that Mrs. Cain changed her position in reference to the alleged proposition. She did not leave her home and family and move in with Mrs. Hougham.

The evidence fails to show a definite promise, an acceptance or a change of position resulting from the promise. Mrs. Cain was paid $15 a day for her services, and there is no showing of any additional services that were to be performed for the additional consideration.

The cases of Jatcko v. Hoppe, 7 Ill2d 479, 131 NE2d 84 and Chabot v. Kelly, 72 Ill App2d 150, 218 NE2d 868, cited by plaintiff, are very clear cases and differ in several respects from the present one.

In the Jatcko case, plaintiff and her husband moved in with decedent, cared for her for 15 years, built several rooms on decedent's house, all without pay. Decedent did tell several people she was leaving the house to her daughter, the plaintiff. She did make a will leaving the house to the daughter. The case, therefore, was one of a definite promise which had been reduced to writing in the form of a will, a promise communicated to numerous people, a response to the promise by change of position of the plaintiff, including fifteen years of service without pay.

In the Chabot case, plaintiff managed a boarding house and cared for decedent without pay. She advanced $3,600, almost half of the purchase price, to buy the property. Decedent originally made a will leaving her the property. Decedent told a number of people that he was leaving the property to plaintiff in return for her services.

444

■ Finally, there is nothing in the evidence to show that plaintiff was not willing to perform the services for the compensation of $15 per day. In cases of an alleged oral contract to make a will it is ordinarily required that the facts should be such that they cannot reasonably be harmonized with any other theory than that the work was done for the alleged promise. Hutton v. Busaytis, 326 Ill 453 on 461, 158 NE 156.

■ Plaintiff alleges error in denying admission into evidence of plaintiff's Exhibit No. 1, a document produced pursuant to Rule 214. It consisted of certain notes in the handwriting of decedent's attorney who had died prior to these proceedings. It is argued that such notes support plaintiff's contention as to the intent of decedent to devise the property to plaintiff. The relevance of such notes is remote and speculative, both in time and substance, and the trial court did not err in refusing admission into evidence for want of foundation.

We do not find any evidence to support the claim of 140.5 days service without pay.

The guardian ad litem appointed by the trial court has filed a petition for the allowance of a guardian ad litem fee upon this appeal. It appears that he has, heretofore, been allowed a fee for services as guardian ad litem in the Circuit Court of McLean County.

This Court is without knowledge of the fees customarily charged by members of the Bar of McLean County. It further does not appear that notice has been given to the parties concerned for purposes of presenting evidence upon the nature and extent of the services performed and the value thereof. It is, therefore, proper that the award of a fee for the services of the guardian ad litem be fixed in the Circuit Court of McLean County.

The judgment of the court below is affirmed, but the cause is remanded to the Circuit Court of McLean Coun-

445

ty for the purpose of the necessary proceedings and determination of any appropriate fees for the services of the guardian ad litem upon this appeal.

. The judgment of the Circuit Court is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.