ROBERT B. SORENSEN *et al.*, Plaintiffs-Appellants, *v.* THE FIRST NATIONAL BANK OF CHICAGO, Ex'r of the Last Will of Gene Cook, Deceased, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 77-202

Opinion filed April 6, 1978.

Max & Herman Chill, P. C., of Chicago, for appellants.

Benjamin B. Davis and Muller Davis, both of Davis, Jones & Baer, of Chicago, for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County sustaining a motion by The First National Bank of Chicago (hereinafter called "First National") for an involuntary dismissal under the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(i)). The

consolidated complaints were filed in the circuit court by Robert B. Sorensen, Willie Gibbs, H. W. Morrow, David Paton, George Rohner, Harold Rosenwinkel, Doris A. Schulze, Lillian Sorensen, and Carl Winnebald, Jr. (hereinafter called "plaintiffs") seeking a declaratory judgment that a bequest of stock under a will was not adeemed.

The issues presented for review are (1) whether the testator was coerced into selling the stock in question, (2) whether the sale of said stock operates as a partial ademption, and (3) whether the plaintiffs allege adequate consideration in order to support a contract claim.

The plaintiffs in this case are present or former employees of Kloster Steel Corporation (hereinafter called "Kloster"), a closely held corporation solely owned by Mrs. Gene Cook (hereinafter called "testator"). On November 22, 1972, the testator executed an inter vivos trust into which she placed certain land and the Kloster stock. The trustee of this trust was First National. The trustee was to manage the assets of the trust and pay income and principal to the testator as she directed. First National was authorized to sell the Kloster stock by the trust as follows:

"F-1. * * * [T]he Trustee shall have full power to invest and reinvest the Trust Estate in such stocks, bonds or other income-producing securities or property, real or personal, as it deems advisable; to sell, exchange or pledge any or all of the trust property as the Trustee deems proper * * *."

The testator reserved the right to modify, alter or revoke the trust by written instrument. At the testator's death, the trust was to be turned over to her estate and pass according to the terms of her will.

On June 1, 1973, the testator executed her last will bequeathing the Kloster stock to the plaintiffs. The pertinent language of her will is as follows:

"ELEVENTH: I give and bequeath all of the shares of KLOSTER STEEL CORPORATION common stock which shall be in my estate, in appreciation of their loyal efforts to this corporation, to the following persons who shall survive me, in the amounts or proportions determined as provided below.

| | |
|---|---|
| (a) WILLIE GIBBS; | (g) HAROLD ROSENWINKEL; |
| (b) H.W. MORROW; | (h) DORIS A. SCHULZE; |
| (c) ALICE PAINE; | (i) LILLIAN SORENSEN; |
| (d) F.W. PAINE; | (j) ROBERT B. SORENSEN; |
| (e) DAVID PATON; | and |
| (f) GEORGE ROHNER; | (k) CARL WINNEBALD, JR. |

Whether or not the foregoing persons may still be working for KLOSTER STEEL CORPORATION at my death, the amount or proportion of said stock to be distributed to each of said persons

shall be determined first by totalling all of the full months of service each has been employed by KLOSTER STEEL CORPORATION up to the time of my death and attributing to each of said persons his or her proportionate percentage of such total; secondly, by totalling all of the annual salaries paid to each of said persons for the year ending December 31, 1972, and attributing to each of said persons his or her proportionate percentage of such total annual salaries; and thirdly, by adding both of the percentages by two (2), in order to give equal weight to the salary and length of employment."

On November 9, 1973, the testator executed a written amendment to her inter vivos trust, in the nature of a pledge agreement, which was intended to secure a loan from First National. This amendment required the approval of First National, acting in its individual capacity, prior to the payment of income or principal of the trust during any period when the testator was indebted to First National. The amendment also provided, absent approval of First National, none of the principal or income of the trust could be distributed unless all indebtedness of the testator to the bank were discharged in full. First National was given the power to sell any of the trust assets upon the demand of itself acting in its individual capacity in the event the trust income and principal cash were insufficient to pay the indebtedness to the bank. Lastly, the amendment prohibited the testator from amending, altering or revoking the trust without obtaining the written approval of First National.

First National, acting in its individual capacity, advanced sums of money totalling $175,000 to the testator during the period from November 22, 1972, through November 9, 1973. First National then offered the Kloster stock for sale. Although already authorized by the inter vivos trust of November 22, 1972, and the amendment to the trust of November 9, 1973, First National, as trustee, obtained prior written approval of the sale of the stock on May 29, 1975, as follows:

"To The First National Bank of Chicago, as Trustee of the Gene Cook Trust:

The undersigned hereby approves and consents to the sale of 84 shares of the common stock of Kloster Steel Corporation held by you as Trustee of the Gene Cook Trust, to a group of employees of said Corporation and the redemption by said Corporation of the balance of its shares held by you as Trustee.

Dated: May 29, 1975.

/s/ Gene Cook
Gene Cook"

On May 30, 1975, Robert Sorensen, Harold Rosenwinkel, Doris Schulze, and Carl Winnebald, Jr., four of the nine plaintiffs herein, and one Gerald A. Witek purchased the Kloster stock after being informed by First National a sale of the stock to others was imminent. These individuals accomplished the purchase through a transaction whereby all but 84 of the 500 shares were redeemed by the corporation. The 84 unredeemed shares were then purchased by these five individuals. The redemption of the 416 shares was achieved partly with funds of the corporation and partly with money borrowed by the corporation, repayment of which was personally guaranteed by the five above individuals.

The plaintiffs filed two suits alleging the same causes of action. One was filed in the circuit court of Cook County, Chancery Division, naming First National defendant in three capacities: executor of the testator's will, trustee of her inter vivos trust and trustee of her testamentary trust. The second suit was filed as a supplemental proceeding in the estate of Gene Cook. First National moved to consolidate the two suits and to dismiss the complaints pursuant to the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(i)).

The chancery suit was consolidated with the supplemental proceeding by order of court. The supplemental proceeding was assigned for hearing. On December 16, 1976, the court sustained First National's motion to dismiss all counts of the complaints with prejudice. Plaintiffs appeal from this order.

The plaintiffs claim the gift of the Kloster stock never adeemed since the testator was coerced into allowing First National to sell.

An examination of the facts reveals the testator, by her June 1973 will, recognized the possibility of the extinction of the gift when she bequeathed to the plaintiffs and others "shares of Kloster Steel Corporation which shall lie in my estate." The record further shows First National had a solid chain of written authority from the testator, to sell the stock, dating back to the inter vivos trust of November of 1972. Plaintiffs' brief on appeal suggests this does not establish the sale of the Kloster stock represented the testator's intention. Plaintiffs make this claim absent an allegation of facts tending to prove the testator's intent was other than the written instruments have indicated.

■■ A motion for dismissal admits all facts well pleaded, but the trial court is not required to consider as admitted allegations of pure conclusions. *County Mutual Insurance Co. v. Drendel* (1969), 116 Ill. App. 2d 466, 252 N.E.2d 757.

■■ The court below decided not to consider the plaintiffs' allegations of conclusions and properly found the consolidated complaints contain no

specific facts which, if proven, would establish coercion. First National as trustee did only what it was expressly authorized to do. Therefore, with regard to the issue of coercion, the complaints were insufficient and were properly dismissed.

Alternatively, the plaintiffs maintain even if the sale of the Kloster stock adeemed the gift to the plaintiffs, it would be only a partial ademption to the extent the proceeds were actually used.

■■■ Ademption of a specific devise is the extinction of the devise by some act of the testator indicating an intention to revoke. Generally, disposal of property specifically devised operates as a revocation of the devise (*Brady v. Paine* (1945), 391 Ill. 596, 63 N.E.2d 721), and when specific bequeathed securities are sold prior to the testator's death the legatees are not entitled to the proceeds of the sale. *Updike v. Tompkins* (1881), 100 Ill. 406.

The plaintiffs, here, claim the general rules should not be followed since First National, as trustee, sold the Kloster stock and the testator never intended ademption to occur.

As previously noted, the trial court is not required to consider as admitted allegations of pure conclusions (*County Mutual*). Coincidental with the issue of coercion, we feel the consolidated complaints contain no specific facts, which, if proven, would establish the intent of the testator was to maintain title of the Kloster stock. As to the issue of partial ademption, the complaints were properly dismissed.

Lastly, the plaintiffs claim an oral contract existed between the plaintiffs and the testator, for which they are entitled to the Kloster stock, or the proceeds of the sale of said stock. Plaintiffs allege the quid pro quo for the testator's promise to devise the Kloster stock was "past loyal efforts" and "their promises to continue in the employ of Kloster Steel Corporation" while using "their best efforts in operating said corporation" until the testator's death. First National claims the plaintiffs failed to adequately allege sufficient consideration to support a contract claim.

■■ Where an oral contract to convey or devise property is claimed, the evidence must be clear and convincing (*Jatcko v. Hoppe* (1955), 7 Ill. 2d 479, 131 N.E.2d 84), and it should be scrutinized carefully by the court, if it appears to be contrary to the provisions of a will (*Wurth v. Hosmann* (1951), 410 Ill. 567, 102 N.E.2d 800). Furthermore, cases of an alleged oral contract to make a will require the facts cannot reasonably be harmonized with any other theory than the work was done for the alleged promise to make a will (*Cain v. Hougham* (1969), 116 Ill. App. 2d 439, 253 N.E.2d 137).

We hold the consolidated complaints contain no specific facts, which, if proven, would establish the existence of an oral contract. No facts alleged, if proven, would be inconsistent with the theory the plaintiffs

continued in the employ of Kloster, never changing their position, in order to receive usual wages, and the legacy was a gift rather than consideration for a contract agreement. Therefore, under rules of modern pleading the complaints were insufficient and were properly dismissed.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.