In the Matter of the Estate of James E. Knight, Deceased.
Thomas E. Knight, Jr., Executor, Appellee, v. Carrie Stanfield, Claimant, Appellant.

Gen. No. 49,322.

First District, Third Division.

June 25, 1964.

John T. Jones, of Chicago, for appellant.

R. Eugene Pincham and Glenn C. Fowlkes, of Chicago, for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order of the Probate Court, denying Carrie Stanfield's claim for $16,273 against the estate of James E. Knight, deceased. Claimant is the wife of Gordon Stanfield, a stepson of the deceased. He is not a party to this proceeding and, so far as appears, has made no claim. Claimant bases her claim on a promise which she charges was made by the deceased to devise to her an apartment in a building owned by him, if she and her husband would give up the apartment in which they lived, dispose of their furniture and come and live with him, and if she would cook and act as his personal attendant, maid and washerwoman. The will makes no such provision, but it does bequeath to Gordon Stanfield the sum of $3,000 and all the deceased's household furniture, furnishings and clothing located in his apartment at 609 East 60th Street, Chicago.

It is undisputed that claimant and Gordon Stanfield moved in with the deceased and that claimant performed some of the services alleged in the complaint until the death of the deceased on January 1, 1962. The real question is whether these services were performed pursuant to a contract between the deceased and the claimant. The trial court found they were not. Before proceeding to a consideration of the facts, we will reverse the usual order and state the rules governing review of the trial court's findings in this type of case.

 In the ordinary lawsuit, the plaintiff is required to prove his case by a preponderance of the evidence. A more exacting measure is applied where an oral contract for a devise or legacy is involved. In such a case, the evidence supporting the contract must be clear and convincing. Moreen v. Estate of Carlson,

200

365 Ill 482, 6 NE2d 871 (evidence to establish existence of contract to make a will, where damages were sought for breach); Linder v. Potier, 409 Ill 407, 100 NE2d 602; Wessel v. Eilenberger, 2 Ill2d 522, 119 NE 2d 207 (evidence to establish existence of contract to make a will where specific performance was sought); Jordan v. McGrew, 400 Ill 275, 79 NE2d 622 (evidence to establish existence of contract to make mutual or reciprocal wills for services rendered). While a precise definition of the phrase "clear and convincing" is difficult, it serves at the least as a strong admonition to the trier of fact to bear in mind that the deceased is not available and that those supporting the claim have the field to themselves, limited only by their own conscience and the practiced eye and ear of the judge. In Moreen v. Estate of Carlson, supra, the court said, at p 489:

> "In an action to recover against an estate upon an express contract to make a testamentary provision, uncontradicted testimony may be rejected if not clear and convincing. (McKeon v. Van Slyck, 223 NY 392.) This court, in Laurence v. Laurence, 164 Ill 367, well said: 'Evidence of admissions made by a person since dead should be carefully scrutinized and the circumstances under which they were alleged to have been made carefully considered with all the evidence in the case. Such evidence is liable to abuse.' The Supreme Court of the United States, in Lea v. Polk County Copper Co., 62 US 493, observed that 'courts of justice lend a very unwilling ear to statements of what dead men have said.'"

In the ordinary case, this court on appeal is bound to affirm the trial court if its findings are not against the manifest weight of the evidence. In the instant case we are doubly bound by the words of

caution which the Supreme Court has enunciated with respect to the kind of case now before us.

James E. Knight was not married and had apparently been living alone at the time Gordon and Carrie Stanfield moved in with him. Several wills of the deceased introduced in evidence indicated his fondness for Gordon, whom he had raised from infancy as if he were his own son. A 1955 will gave Gordon a one-third interest in an apartment building at 660 East 51st Street, Chicago, and after Gordon and Carrie had moved in with the deceased, a 1958 will increased this interest to one-half. In all the wills except the last, Carrie was given an interest, *but it was contingent upon Gordon's predeceasing his stepfather.* At no time was she given a joint interest with her husband, and at no time did the deceased give her an interest separate from Gordon's. As we have hereinbefore set out, James Knight's last will left Gordon only a $3,000 bequest and some household effects. Carrie was not mentioned at all. The interest in the apartment building was given to another relative. The whole tenor of the documentary evidence indicates a desire on the part of the deceased to benefit Gordon, and only incidentally to benefit the claimant because she was Gordon's wife.

Claimant's witness Edwina Fisher, a friend of the deceased, testified that in February 1958 the deceased in her presence told the claimant he wanted her and Gordon to come and live with him; that if she and Gordon moved in with him, took care of him, and did his cooking and washing, the apartment would be her home for the rest of her life, and that he would make it legal; that Carrie asked what she would do with her furniture, and that the deceased said they could sell it or give it away; that he had enough furniture for all of them. The witness further testified that the claimant said she would discuss it with her husband who "was on the road," but she thought it would be

all right, and that the deceased told the claimant to quit her job, not to worry, as he had enough money to take care of that.

Agatha Pisut, an employee of Knapp and Tubbs Furniture Wholesales, testified for the estate that Carrie Stanfield worked for the company as a substitute employee from August 15 to August 31, 1952, from October 4 to October 11, 1954, for two weeks in 1955, and again for two weeks in 1957. She therefore was not an employee of the company at the time of the alleged offer to her by the deceased, and the estate argues quite persuasively that she really had no other kind of job, because if she did, it would have been easy for her to have introduced evidence to that effect.

Mr. Toles, an attorney for the deceased, testified that on or about March 18, 1958, the deceased told him he had promised the claimant he was going to leave her an apartment in his building for the rest of her life because she had given up her apartment and had come to live with him and take care of him in his declining years. A directive dated March 18, 1958 from the deceased to Toles on a 1955 will provided: "Toles: change will. I want Gordon and wife to have one-half of 660 East 51st Street, instead of one-third, all household furnishings in the apartment at 609 East 60th Street, and my auto." This directive was incorporated in the 1958 will, but was not included in the deceased's last will.

Cecil Sturges, a friend of the deceased who lived in the same apartment building, testified for the estate that the decedent had said in the presence of the claimant and Gordon that he had been taking care of Gordon all his life, and that he had permitted Gordon and his wife to move in with him so that Gordon could get ahead, the inference being that by their moving in with him, they saved themselves rent and other household expenses. There was testimony that Gordon was diabetic and that he was irregularly employed because

203

of his physical condition. There also was testimony that the deceased did not rely entirely upon Carrie Stanfield for his needs; that he sent his laundry out, did some of his own shopping, took some of his evening meals at a friend's home, and was able to drive his car himself.

In cases of this kind it is easy for a claimant to believe that chance conversations with the deceased and terms of affection and expressions of gratitude constitute agreements to perform services to be compensated for by a devise or legacy. Their moving into the deceased's apartment in itself presented rewards, advantages and hopes to the stepson and his wife which are compatible with the estate's contention that while the deceased was interested in his stepson and intended to do something for him in his will, he made no agreement with the claimant for any devise or bequest to her. The trial court correctly found accordingly.

While there is a count in the complaint which seeks to recover in quantum meruit for services rendered, the trial court found no evidence to support it, and no point with respect to that count was raised in claimant's brief. Therefore, we have given it no consideration.

We are of the opinion that the trial court properly found for the estate.

Judgment affirmed.

DEMPSEY and SULLIVAN, JJ., concur.