Ruth C. Donnelly, Plaintiff-Appellant, v. Arta Naum, et al., Administrator With the Will Annexed of the Estate of Adam Naum, Deceased, Defendants-Appellees.

Gen. No. 53,201.

First District.

February 3, 1969.

Arthur Abraham, Harry J. Myerson, and Phillip L. Howard, of Chicago, for appellant.

Daniel D. Glasser, of Chicago, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

Plaintiff's suit to specifically enforce a contract to make a will in her favor was dismissed for want of equity. In the Chancellor's view as specifically stated in his decree, the services rendered by the plaintiff were

petty and the alleged contract was unfair, unjust, and unconscionable. The Master in Chancery had recommended specific performance and overruled objections to his report. These objections were permitted to stand as exceptions before the Master and were argued extensively and sustained. In this court, plaintiff-appellant insists that the Master saw, heard, and observed the witnesses and neither the trial court nor this court should lightly substitute its judgment for that of the Master on issues of fact or credibility of witnesses. We don't. What the Master saw, heard, and observed, taken as true, is woefully lacking in those elements which prompt a court of equity to enforce a contract to make a will to avoid manifest injustice and to avoid making the Statute of Frauds an instrument of fraud itself. Wessel v. Eilenberger, 2 Ill2d 522, 119 NE2d 207; Burke v. Burke, 12 Ill2d 483, 147 NE2d 373.

Adam Naum was an Albanian, had a wife and children behind the Iron Curtain in Albania, had worked as a busboy for the Chicago Athletic Club since 1930, had annually sent some $500 or $600 per year to his family, lived with a cousin in Chicago, became a naturalized citizen in 1944, and executed a will in 1953, leaving all of his property to his wife and children. He died suddenly in 1965 and his 1953 will was admitted to probate.

In 1956, the plaintiff came to work as a waitress at the Chicago Athletic Club. The evidence suggests a strong friendship developed between the plaintiff and the decedent. Adam assisted in setting up her tables, kept the water glasses and coffee cups of her customers filled, provided them with matches and "hustled" for plaintiff's patrons first and for the others if he had time. She, in turn, would lighten his trays, sew on a button now and then, give him cigarettes, provide an aspirin when he had a headache, and they would walk

341

in the park or go for coffee or a beer or to the public library during their two-hour break between shifts. She went with him to assist in obtaining his social security when his compulsory age retirement at the Chicago Athletic Club was imminent. Plaintiff lived with her two children and there is no evidence that Adam was ever in her house, ever visited with her at any time during weekends, or ever saw her except during his employment hours at the Chicago Athletic Club and the two-hour interval described. She met his cousin with whom he lived for the first time at the funeral home after Adam's death. Thus far therefore we have nothing but two good friends each helping to make life a little more pleasant and enjoyable for the other.

In 1962, the plaintiff appeared in the employees' lounge and announced that she was leaving Chicago and returning to Texas. Adam protested this rather bitterly according to the witnesses, suggested that she couldn't do that to him and stated that if you will stay and take care of me the rest of my life, I'll make a will and leave everything to you. A few days later, plaintiff said she had thought it over and that she had decided to accept Adam's proposition and stay in Chicago. The same friendly routine continued until his unexpected death during his vacation in 1965. There was no change in the relationship briefly described above and the services rendered by the plaintiff were substantially the same if we ignore evidence that is conflicting as to whether she did his weekly wash for him both before and after 1962.

The difficulty with the plaintiff's position is that she alleged one contract in her complaint, a different contract in her claim filed in the probate court and her statements after Adam's death contradicted both of them. Plaintiff's complaint alleges that the promise of Adam was in consideration of the promise by her that if she would stay with him and "look after him for the rest of his life" and provide for his wife and son in Albania,

that he would leave to her . . . all of his property and estate and would make a will to that effect. The testimony in support of this contract has not one single word of testimony concerning the care of the wife and the son in Albania. She likewise alleged that she would fully carry out her promise and agreement and provide for the widow and son if she could get funds into Albania where they reside. There is no testimony whether this was to be all or only a part of the estate. In her claim filed in the estate no mention is made of the wife and son, but she does allege in that claim that contrary to his contract with her he left a will leaving all of his property to the wife in Albania. In the Burke case cited above, it was pointed out specifically that a party to a suit, whether it be in law or in equity, cannot have relief under proofs without allegations or allegations without proof in support thereof. Just what the contract was, we cannot tell from this record. Further doubt is cast upon what the contract was or was to be by plaintiff's conversations with others and with a letter to the widow after Adam's death.

The lawyer who prepared the will was present at a conversation with the executor named in the will, the plaintiff, and one other party shortly after Adam's death. The discussion was about the property of Adam. They all went over to a restaurant in Mrs. Donnelly's automobile and conferred about the estate. She asked to see the will. The attorney asked her what her interest in it was and she said "none at all. I merely am a friend of Adam Naum's and I want to help his widow. I want to get all of this money together and send it to her. I don't want any part of it." Also in a letter to the widow, the plaintiff stated that she was "doing everything possible to keep my promise to Adam and get this money so that I can send it to you." This letter contains a certification by four people as to plaintiff's honesty, integrity and veracity and the certification concludes

that "we want to make sure that Adam's family is taken care of." These are the same people who testified in court to the alleged contract. The statements made to the lawyer by her and in the letter to the widow by both plaintiff and her witnesses are statements wholly inconsistent with a claim that a contract existed between her and Adam to make a will giving all of the $40,000 estate to the plaintiff. These contradictions we may consider. 69 ALR 214. We have had no case cited nor have we been able to find one where the circumstances here shown have warranted the enforcement of an oral contract to make a will or supported a claim for compensation.

So we have carefully scrutinized the evidence in this record as we must, Moreen v. Carlson's Estate, 365 Ill 482, 6 NE2d 871, to find a contract clear, convincing, definite, and unequivocal as it should be, Wessel v. Eilenberger, 2 Ill2d 522, 119 NE2d 207, In re Knight's Estate, 51 Ill App2d 198, 200 NE2d 916, supported by some showing that the plaintiff made some unusual sacrifice or substantial change to her detriment, physical or financial as she alleged, induced by the contract, Linder v. Potier, 409 Ill 407, 100 NE2d 602; Yager v. Lyon, 337 Ill 271, 169 NE 222; Pocius v. Fleck, 13 Ill2d 420, 150 NE2d 106; Jatcko v. Hoppe, 7 Ill2d 479, 131 NE2d 84, that compels specific performance of a contract to make a will so that a fraud or injustice can be avoided. Such a contract is nowhere in this record.

The will of Adam Naum now in probate takes care of the widow of Adam. Plaintiff, in her statement to the lawyer and in the letter to the widow, and four of her principal witnesses said this is what they wanted done. So be it. Decree dismissing the suit for want of equity is affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.