154 Ill. App.3d 744 (1987)
506 N.E.2d 450
In re ESTATE OF OTTO L. KONOW, SR., Deceased (Dorothy Abbott, f/k/a Dorothy Miller, et al., Petitioners and Plaintiffs-Appellees,
v.
Otto L. Konow, Jr., et al., Respondents and Defendants-Appellants; Wanda Trumbie, a/k/a Wanda Trumble, et al., Respondents-Defendants).
No. 3-86-0445.
Illinois Appellate Court  Third District.
Opinion filed April 2, 1987.
*745 Peterson & Whitley, of Des Plaines (John E. Peterson, of counsel), for appellants Otto L. Konow, Jr., and Walter O. Konow.
Eugene Korst, of Lockport, for appellee Lila Konow.
Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Louis R. Bertani, of counsel), for other appellees.
Judgment reversed.
JUSTICE HEIPLE delivered the opinion of the court:
The decedent, Otto L. Konow, Sr., died testate on May 13, 1983, at the age of 89 years. He left as his heirs four children. They are: his son, the primary defendant herein, Otto Jr., and his three daughters, the plaintiffs herein, Dorothy Abbott (Dorothy), Florence Mitchell (Florence), and Lila Konow (Lila). The decedent was a farmer. His son farmed with him.
The decedent's last will and testament, dated April 26, 1977, and revocable living trust, dated April 23, 1977, were admitted into probate. *746 All of the decedent's personal property, except the household goods, furniture, and effects located at the family farm household, was bequeathed to the defendant. The household goods, furniture, and effects located at the family farm household were bequeathed to Lila. The decedent specifically excluded Dorothy and Florence from receiving a bequest or devise by virtue of the will stating that they were adequately provided for in the revocable living trust incorporated in the will.
The revocable living trust devised to Dorothy and Florence 30 acres of the decedent's property in equal proportions. It further provided Lila with a life estate in the family farm consisting of approximately 120 acres, remainder in fee simple to the defendant. The defendant also received the remainder of the decedent's real property in fee simple.
Each of the plaintiffs filed a 14-count complaint contesting the 1977 will and revocable living trust, a 1973 will and three trusts, and seeking specific performance of an alleged contract to will. Each plaintiff also filed a claim for damages for breach of the alleged contract to will. Lila also filed a claim for breach of an alleged second contract to will. The only issue that concerns us on appeal is the contract-to-will issue raised by all three plaintiffs. This issue necessitates a further review of the facts.
The decedent also had another son, George, who committed suicide in February 1962. George died leaving 77 acres of real estate valued at $30,500. George's land passed intestate as follows: one-sixth interest to each of George's siblings, the defendant, Dorothy, Florence and Lila, and two-sixths or one-third interest to the decedent. The plaintiffs allege that shortly after George's death they entered into an oral contract whereby the decedent agreed to make a will devising an undivided one-fourth interest in George's land to each of his children if they would then convey their undivided one-sixth interests in George's land to the decedent. Dorothy devised her undivided one-sixth interest to the decedent on July 16, 1963. Approximately one month before delivering the deed, Dorothy received a check for $5,500 from the decedent. She testified that the check was unrelated to the deed she executed. The defendant and Lila conveyed their one-sixth interests to the decedent on November 5, 1962. Lila received a promissory note in the amount of $5,500 approximately three months later. She stated that the note was not actually payment for the deed, but was for "signing off" George's estate. Testimony concerning what the defendant received was not allowed. On November 30, 1962, Florence conveyed her one-sixth interest in George's land to the decedent. *747 About that time she also received a promissory note in the amount of $5,500, but denied that it was related to the deed. The plaintiffs further allege that although they conveyed their interests as agreed, the decedent sold part of George's land during his lifetime and devised the rest to the defendant through his will in violation of the agreement.
The decedent retired from farming shortly after George's death and resided part of the time in Crystal Falls, Michigan. He leased his farmland to the defendant on a share-crop basis, and this arrangement continued until the decedent's death. In the late 1960's, the decedent met and befriended a retired attorney, Thaddeus Morowski, who had moved near his farm. Morowski did some legal work for the decedent, including handling a traffic matter, preparing the leases between the decedent and the defendant, executing a prenuptial agreement between the decedent and his second wife, preparing a 1973 will and trust, and preparing the 1977 will and trust agreement in question. Morowski testified that the decedent never mentioned the alleged contract to will to him.
The decedent remarried in 1973. By virtue of the prenuptial agreement prepared by Morowski, 17 acres of George's land was placed in joint tenancy with right of survivorship with his new wife. The decedent also had a will and three trusts prepared at that time which did not provide that the remainder of George's land pass equally to the four children. In 1974, the decedent sold six of the 17 acres to a person named Habernicht, and in 1975, he sold another acre to the Homer Congregational Church.
In 1976, the decedent's second wife died. Following her death, the decedent sold off the remaining 10 acres that he had owned with her in joint tenancy. In April 1977, the decedent executed the will and revocable living trust that is the subject of the present dispute. The trust provided that the defendant was to receive the remaining 60 acres of George's land in fee simple.
Trial was held with an advisory jury. The jury found that the decedent had entered into an oral contract to devise by will to each of his children an undivided one-fourth interest in George's land in return for their conveying to him their undivided one-sixth interests in the same. The judge ruled in the plaintiffs' favor based on the jury verdict. The court then ordered the defendant individually and as co-administrator to execute and deliver to the plaintiffs a warranty deed granting each plaintiff an undivided one-fourth interest in the remaining 60 acres of George's land. It further entered judgment against the defendant and his son, as co-administrators of the estate, and in favor *748 of each plaintiff, in the amount of $26,625, representing their one-fourth interest in the 17 acres of George's land conveyed by the decedent during his lifetime. The defendants appeal. We reverse.
The defendant first argues on appeal that the trial judge erred in refusing certain tendered jury instructions concerning the correct burden of proof in a contract-to-will case. The following tendered instructions were refused:
"It has also been said that the term `clear and convincing' evidence means that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."
"Proof of an oral promise to make a legacy or devise must be clear and convincing. A precise definition of `clear and convincing' is difficult, but it serves as a strong admonition to the jury to bear in mind that the deceased is not available and that those supporting the claim have the field to themselves, limited only by their own conscience and the eye and ear of the jury."
The court instructed the advisory jury in accordance with Illinois Pattern Jury Instruction, Civil, No. 21.01 (2d ed. 1971), which reads:
"21.01 Meaning of Burden of Proof
When I say that a party has the burden of proof on any proposition, or use the expression `if you find', or `if you decide', I mean you must be persuaded, considering all the evidence in the case, that the proposition on which [he] has the burden of proof is more probably true than not true."
 1 The defendant correctly points out that the evidence supporting an alleged contract to will must be clear and convincing or more exacting than the proof required to prove a case by a preponderance of the evidence. (In re Estate of Knight (1964), 51 Ill. App.2d 198, 200 N.E.2d 916.) Illinois Pattern Jury Instruction No. 21.01 sets forth the lesser standard and was erroneously given. However, where the verdict of the jury is advisory only, and the decree shows that it was not based upon the verdict of the jury alone, but was the result of an independent consideration of the evidence presented, the erroneous instruction will not serve as grounds for reversal. (Dunn v. Heasley (1940), 375 Ill. 43, 30 N.E.2d 628.) Still, as a practical matter, we cannot overlook the fact that the erroneous instruction depreciates the value of the jury's advisory verdict and the judge's ruling in conformity therewith.
*749  2 The defendant next argues that certain testimony of Dorothy's should have been disqualified because of the Dead Man's Act (Act) (Ill. Rev. Stat. 1985, ch. 110, par. 8-201). The Act provides:
"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability * * *." (Ill. Rev. Stat. 1985, ch. 110, par. 8-201.)
The trial court limited the plaintiffs' testimony to conversations they had with the defendant, outside of the presence of the decedent, in the form of admissions by silence or otherwise by the defendant, that the decedent had promised to deed back George's land to the children equally in his will. The defendant argues that though Dorothy commenced to testify about conversations with him, as her examination progressed it became apparent that she was testifying about conversations she had with the decedent. The defendant points to the following testimony of Dorothy, where plaintiffs' counsel asked her about a certain telephone conversation with the defendant, in support of his argument.
"Q. What, if anything, did you say to your brother and what, if anything, did he say to you about the for sale sign on the 17 acres that you just described?
A. I asked him  I said, `you know, that the 17 acres was George's land and pa had promised to give that back to us.' I asked him how come it was for sale.
Q. Did you tell him in what manner, as far as you were concerned, your father had promised to give it back to you?
A. Yes. He promised to Will it back to us.
Q. Who promised to Will it back to you?
A. Our father.
Q. You are telling this to your brother Otto?
A. Yes.
Q. Did you tell him anything about  did you tell him anything else about what your father had promised?
A. That he was going to give us that land back. He was going to make a Will and that was going to be our land.
Q. When?
A. After he died.
Q. After who died?

*750 A. Our father.
Q. Did you tell him anything in regard to what amounts or shares it was going to be Willed back to you?
A. It was supposed to be divided up between the four of us."
We agree with the defendant that Dorothy's testimony should have been disallowed as prohibited by the Dead Man's Act. The purpose in eliciting Dorothy's testimony concerning an alleged telephone conversation with her brother was to demonstrate that a specific conversation was had with decedent wherein he agreed to will George's land back to the children equally. Testimony of the specific conversation with the decedent was plainly prohibited by the Dead Man's Act. It was error for the court to allow Dorothy to testify indirectly to a conversation she had with the decedent when she could not have done so directly. Manning v. Mock (1983), 119 Ill. App.3d 788, 457 N.E.2d 447.
 3 Additionally, we disagree with the plaintiffs' argument that Dorothy's testimony met an exception to the Act which provides:
"If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." (Ill. Rev. Stat. 1981, ch. 110, par. 8-201(a).)
The plaintiffs maintain that by calling Lila to the stand and asking her about the alleged contract to will, the defendant opened the door and allowed Dorothy to testify fully in reference to her conversations with the decedent about the contract to will. We disagree.
Lila's testimony was equivocal and confusing at best in regard to the alleged contract to will. This can be explained by the fact that she suffered from a nervous breakdown shortly after George committed suicide and spent the two months following his death in a hospital. Dorothy testified that there were certain family conversations following George's death concerning the disposition of his estate and that the alleged contract to will was entered into as a result of the conversations. It is unclear, but doubtful, whether Lila was even present during these conversations. To fully understand our resolution of this issue, Lila's testimony will be set out in relevant parts.
Lila was called as an adverse witness by the defense during its case in chief. It was first established that during a deposition Lila testified that she did not remember the decedent's promising to will the *751 children George's land in equal parts if they would convey their one-sixth interests in the same to him. On direct examination, she diverged from the deposition and stated that she did hear the decedent mention that he was going to divide George's land between the children when something happened to him. The circumstances under which she heard this were not explained. She further stated that there was such an agreement with Dorothy and that she did not know whether there was such an agreement with Florence.
On cross-examination by plaintiffs' counsel Lila was asked the following question:
"Whether you were gone for a period of time or not, you are aware of the fact that your Father did make an agreement, not only with you and not only with Florence, and not only with Dorothy, but with [the defendant], that if you all gave him a deed to George's seventy-seven acres he'd make a will and give it back to you equally when he died, are you not?"
Lila answered "Yes."
Finally, on redirect examination, Lila was asked, "You don't know of any such agreement, do you?" She answered, "I don't know, really. I don't know. I mean, I was nervous, I was upset at that time, and I really don't know. I'm honest."
None of Lila's testimony concerned a specific conversation or event that took place in the decedent's presence. She only testified generally in regard to her knowledge of the alleged contract to will. Thus, Dorothy cannot be considered as having testified concerning the same conversation or event testified to by Lila, and her testimony should have been prohibited.
 4 The defendant next takes issue with the court's ruling denying admission into evidence of a 1973 will executed by the decedent. The defendant's offer of proof established that the 1973 will was virtually identical to the 1977 will being contested. The evidence also established that the 1973 will sought to be admitted was a duplicate of the original found in Thaddeus Morowski's files. The original was not found in the decedent's possession. The defendant cites the rule from Anson v. Haywood (1947), 397 Ill. 370, 74 N.E.2d 489, that the execution of a will out of harmony and inconsistent with an alleged oral contract to will is admissible evidence bearing upon the improbability of the existence of such a contract. The plaintiffs argue that the 1977 will of the decedent submitted to probate was admitted into evidence for the purpose stated in Anson and that the rule in Anson does not apply to a prior, unprobated will, such as the 1973 will. We disagree. A will that is invalid for probate purposes may still have valid evidentiary *752 purposes. For instance, in In re Estate of Nelson (1981), 103 Ill. App.3d 640, 431 N.E.2d 1103, the plaintiff brought an action for specific performance of an oral agreement to make a will. The plaintiff alleged that in return for providing the decedent with care, the decedent orally promised to make a will devising certain property to the plaintiff. In defense of the claim, the defendant introduced into evidence an unsigned will drawn up by the decedent's attorney shortly before the decedent's death. The unexecuted will indicated that the decedent intended to sell the property in question. Based in part on the evidence of the unexecuted will, the court granted summary judgment in favor of the defendants. In the instant case, the 1973 will helped refute the plaintiffs' claim that a contract to will existed. It should have been admitted into evidence.
 5, 6 Finally, the defendant argues that the plaintiffs failed to meet their burden of proof that a contract to will existed. The evidence offered in support of such contract must be clear and convincing. (Jatcko v. Hoppe (1955), 7 Ill.2d 479.) Alleged oral agreements to make testamentary dispositions of property by will are not favored, and, thus, claims of such agreements are closely scrutinized and the alleged agreement is reviewed with more suspicion than is the case with most contracts. (In re Estate of Rice (1979), 77 Ill. App.3d 641, 396 N.E.2d 298.) We agree with the defendant that the plaintiffs failed to meet their burden of proof.
In cases where contracts to will have been found to exist, the courts have pointed to the independent evidence supporting the contract, rather than placing reliance on the claimant's own self-serving statements that such a contract existed. For example, in Jatcko v. Hoppe (1955), 7 Ill.2d 479, the court looked to numerous statements by the decedent to disinterested persons that the decedent had given the property to the claimant in her will. In the instant case, the plaintiffs offered no such testimony from disinterested persons. The evidence presented by the plaintiffs consisted of the testimony of Dorothy and Florence, obviously interested persons, and the defendant, who was called as an adverse witness for purposes of setting the scene. We have determined that certain relevant parts of Dorothy's testimony were barred by the Dead Man's Act. Lila was not called as a witness in her own behalf, but only by the defendant as an adverse witness. Lila's testimony established her uncertainty and confusion as to whether a contract to will existed; her most reliable statement on this point was likely that she knew nothing of such a contract.
The courts also look to circumstantial evidence of the actions of the parties and whether they are consistent with the alleged contract *753 to will. (See Anson v. Haywood (1947), 397 Ill. 370, 74 N.E.2d 489.) The defendant presented ample evidence of acts inconsistent with such a contract. The defendant showed that George's land was valued at $30,500 at the time his estate was probated. Each child had an undivided one-sixth interest in this property. Thirty thousand, five hundred dollars divided by six equals $5,083.33. Dorothy, Florence, and Lila each testified to receiving $5,500 about the same time that they conveyed their interests in George's land to the decedent. We believe that these facts are compatible with a simple buy out.
 7 In addition, the defendant introduced evidence of actions by the decedent which consistently repudiated the existence of the alleged contract to will. In 1973, before his marriage to his second wife, the decedent executed a prenuptial agreement whereby he agreed to place 17 acres of George's land into joint tenancy with Mildred Harding for the consideration of marriage, so that it would pass to her outright upon his death. About this same time, the decedent executed a will that incorporated a trust agreement which provided that the remaining 60 acres of George's land pass to the defendant in fee simple. In November of 1973, the decedent entered into two listing agreements with a realtor to sell the 17 acres of George's land that he had placed in joint tenancy with his second wife. Eventually, the decedent sold the 17 acres to various buyers, again acting discordantly with any contractual obligations. Finally, we must consider the 1977 will in question, which is incompatible with the plaintiffs' contentions. A will disposing of property out of harmony and inconsistent with an oral contract is a circumstance to be considered as bearing upon the improbability that such a will would have been made while under the obligations of a contract. (Anson v. Haywood (1947), 397 Ill. 370, 74 N.E.2d 489.) Finally, the defendant points out that though the decedent's attorney and friend, Thaddeus Morowski, assisted the decedent with all his legal needs, not once did the decedent mention to Morowski the alleged contract to will.
Based on the foregoing evidence we conclude that the plaintiffs failed to sustain their burden of proving by clear and convincing evidence that a contract to will existed. Accordingly, the judgment of the circuit court of Will County is reversed.
Reversed.
BARRY, P.J., and SCOTT, J., concur.